No. 25-1751

# United States Court of Appeals
## *for the*
## Fourth Circuit

CURTIS M. WHATELEY,

*Plaintiff-Appellant*,

— v. —

GERALD F. LACKEY, Ph. D., as Commissioner of the Va DMV,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT LYNCHBURG

# APPELLANT'S OPENING BRIEF

Matthew W. Callahan
Eden B. Heilman
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF VIRGINIA
Post Office Box 26464
Richmond, Virginia 23261
(804) 523-2146

*Counsel for Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • [813621]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1751__          Caption: __Whateley v. Lackey__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Curtis Whateley__
(name of party/amicus)


who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                          ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Matthew W. Callahan          Date: 7/24/25

Counsel for: Appellant Curtis Whateley

- 2 -

**Print to PDF for Filing**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF THE ISSUE ......................................................................1

STATEMENT OF THE CASE........................................................................1

    I.    Introduction ....................................................................................1

    II.    Statement of the Facts ....................................................................6

        A.    Virginia's Personalized License Plate Program...........................6

        B.    Mr. Whateley's Personalized License Plate .............................8

    III.    Procedural History.........................................................................9

SUMMARY OF THE ARGUMENT ..........................................................10

STANDARD OF REVIEW ........................................................................14

ARGUMENT ..............................................................................................15

    I.    The Government-Speech Doctrine And Public Forum Law...............15

        A.    The Government-Speech Doctrine ...........................................15

        B.    Private Speech on Government Property and Public Forum Law ........................................................................16

        C.    *Walker* and Texas's Specialty License Plate Program ............20

    II.    The Message of Mr. Whateley's Character Combination Was "FTP&ATF," Not "This Vehicle Is Registered With The State." ........................................................................24

    III.    Mr. Whateley's License Plate Character Combination Is Private Speech, Not Government Speech ...........................................28

        A.    The History of Personalized Character Combination Messages Like Mr. Whateley's Weighs In Favor of a Finding of Private Speech.......................................................29

i

B.    The Public Likely Perceives Personalized Character Combinations As Private Speech, Not Government Speech ..................................................................31

C.    The Government Has Failed to Shape or Control the Messages in Personalized Character Combinations .................39

IV.    This Court Should Vacate The District Court's Order And Remand For Further Proceedings.......................................................46

CONCLUSION.............................................................................................48

REQUEST FOR ORAL ARGUMENT .................................................................49

CERTIFICATE OF COMPLIANCE ....................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*,
45 F.3d 1144 (7th Cir. 1995) .................................................................. 19, 27, 42

*Brown v. Brock*,
632 F. App'x 744 (4th Cir. 2015) .......................................................................14

*Byrne v. Rutledge*,
623 F.3d 46 (2d Cir. 2010) .................................................................................23

*Carroll v. Craddock*,
494 F. Supp. 3d 158 (D.R.I. 2020) ............................................................... 23, 32

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*,
470 F.3d 1062 (4th Cir. 2006) ............................................................................19

*Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*,
45 N.E.3d 1200 (Ind. 2015) ................................................................................24

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) .................................................................................... 19, 20

*Davison v. Rose*,
19 F.4th 626 (4th Cir. 2021) ..............................................................................42

*De'Lonta v. Angelone*,
330 F.3d 630 (4th Cir. 2003) ..............................................................................14

*Emps.' Innovative Network, LLC v. Bridgeport Benefits, Inc.*,
144 F.4th 571 (4th Cir. 2025) ....................................................................... 14, 46

*Gilliam v. Gerregano*,
2025 WL 617603 (Tenn. Feb. 26, 2025),
*cert. petition docketed*, 25-107 (S. Ct. July 29, 2025) ............................ 23-24, 38

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001) .............................................................................................27

*Gowen v. Winfield*,
130 F.4th 162 (4th Cir. 2025) .............................................................................14

*Greer v. Spock*,
424 U.S. 828 (1976) ...........................................................................................20

*Hart v. Thomas*,
422 F. Supp. 3d 1227 (E.D. Ky. 2019)............................................................. *passim*

*Harvey v. Cable News Network, Inc.*,
48 F.4th 257 (4th Cir. 2022)..................................................................14

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*,
505 U.S. 672 (1992) ..............................................................................19

*Jackson v. Godwin,*
400 F.2d 529 (5th Cir. 1968)...................................................................2

*Kotler v. Webb*,
2019 WL 4635168 (C.D. Cal. Aug. 29, 2019) ............................... *passim*

*Krasno v. Mnookin*,
No. 22-3170, 2025 WL 2180825 (7th Cir. Aug. 1, 2025).....................41

*Lewis v. Wilson*,
253 F.3d 1077 (8th Cir. 2001) ...............................................................47

*Martin v. Duffy*,
858 F.3d 239 (4th Cir. 2017) .................................................................14

*Matal v. Tam*,
582 U.S. 218 (2017) .............................................................. *passim*

*Mitchell v. Md. Motor Vehicle Admin.*,
148 A.3d 319 (Md. 2016)
*as corrected on reconsideration* (Dec. 6, 2016)..................................... 23, 24, 35

*Odquina v. City of Honolulu*,
2022 WL 16715714 (D. Haw. Nov. 4, 2022), *aff'd on other grounds*,
2023 WL 4234232 (9th Cir. June 28, 2023).........................................24

*Ogilvie v. Gordon*,
2020 WL 10963944 (N.D. Cal. July 8, 2020) ......................................23

*Overington v. Fisher*,
733 F. Supp. 3d 339 (D. Del. 2024) ................................. 23, 29, 33, 42

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U.S. 37 (1983) ................................................................................19

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) .............................................................. *passim*

iv

*Pruitt v. Wilder*,
  840 F. Supp. 414 (E.D. Va. 1994) .................................................................. *passim*

*Reeves v. Meddings*,
  No. 21-2391, 2022 WL 17091862 (4th Cir. Nov. 21, 2022)...............................46

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) ........................................................................................19

*Se. Promotions v. Conrad*,
  420 U.S. 546 (1975) ........................................................................................18

*Shurtleff v. City of Bos.*,
  596 U.S. 243 (2022) .................................................................. *passim*

*Stewart v. D.C. Armory Bd.*,
  863 F.2d 1013 (D.C. Cir. 1988).................................................... 31, 47

*U.S. v. Garcia*,
  855 F.3d 615 (4th Cir. 2017) ...........................................................................2

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
  481 F. Supp. 2d 673, 2006 WL 4447643 (W.D. Tex. 2006)...............................2

*United States v. Avila*,
  134 F.4th 244 (4th Cir. 2025)........................................................ 14, 46

*United States v. Moore*,
  No. 2:22-PO-289, 2023 WL 5487340 (E.D. Cal. Aug. 24, 2023) ................. 47-48

*Walker v. Texas Division, Sons of Confederate Veterans*,
  576 U.S. 200 (2015) .................................................................. *passim*

*Warren v. Fairfax Cnty.*,
  196 F.3d 186 (4th Cir. 1999) ........................................................ 11, 17

*White Coat Waste Project v. Greater Richmond Transit Co.*,
  35 F.4th 179 (4th Cir. 2022)......................................................... 16, 18, 19, 36

**Constitutional Provisions:**

U.S. Const. amend. I .................................................................. *passim*

U.S. Const. amend. XIV ...................................................................................10

**Statutes:**

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

42 U.S.C. § 1983 ............................................................................................... 1, 10

Va. Code § 46.2-725 ...........................................................................................7, 8

Va. Code § 46.2-726 ..............................................................................................6

**Rules:**

Fed. R. Civ. P. 12 ................................................................................................10

Fed. R. Evid. 201(b) ..............................................................................................1

**Other Authorities:**

Associated Press,
  *Va. drivers vainest of them all with their plates*,
  NBC NEWS ...........................................................................................................8

*Create a Plate*,
  VIRGINIA DEP'T OF MOTOR VEHICLES ...................................................................6

Michele Kettner,
  *Can You Decipher These Virginia Vanity License Plates?*,
  NORTHERN VIRGINIA MAGAZINE ............................................................................1

*Personalized License Plate Guidelines and Restrictions*,
  VIRGINIA DEP'T OF MOTOR VEHICLES ...................................................................2

*Personalized Message Information*,
  VIRGINIA DEP'T OF MOTOR VEHICLES ...................................................................7

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. The district court entered an order granting Defendant's motion to dismiss on May 30, 2025. JA31. Plaintiff filed a timely notice of appeal on June 30, 2025. JA32. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred in granting Defendant's motion to dismiss Plaintiff's First Amendment claim on the grounds that the message in the text of Plaintiff's personalized license plate was government speech.

## STATEMENT OF THE CASE

### I.     Introduction

Virginia has the highest percentage of personalized license plates[1] of any state in the United States, accounting for over 930,000 separate plates and approximately 11% of all vehicles registered in the state.[2] Drivers request these personalized license

---

[1] The type of license plate at issue in this case is also known as a "vanity plate," which is also the term used by the district court. Because Virginia's own materials use the term "personalized plates," this brief will use that terminology except when quoting other sources. No difference in meaning is intended between the two usages.

[2] Michele Kettner, *Can You Decipher These Virginia Vanity License Plates?*, NORTHERN VIRGINIA MAGAZINE (Apr. 2, 2025, 9:58 a.m.), https://northernvirginiamag.com/culture/2025/04/02/can-you-decipher-these-virginia-vanity-license-plates/. This Court can take judicial notice of widely-known facts reported in publicly available newspaper articles. *See* Fed. R. Evid. 201(b);

1

plates by visiting the Virginia Department of Motor Vehicles ("DMV") website, paying a $10 annual fee, and accepting the website's invitation to begin "[c]reating a personalized message."[3] The character combination on these plates is made up of letters, numbers, and symbols that are selected entirely at the choice of the requester; as long as they are not already in use and obey a handful of guidelines aimed at preventing indecent material, a license plate with the requested character combination is automatically issued.[4]

Curtis Whateley is one such Virginia driver. He requested a license plate with a personalized message and drove with it for over a year without incident. When an anonymous citizen complained about his license plate, the DMV recalled it and refused to permit him to continue using the message. Mr. Whateley pursued his administrative remedies to no avail and ultimately filed suit in federal district court, arguing that the DMV's recall of his personalized plate because of its message violated his First Amendment right to free speech.

---

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680, 2006 WL 4447643 (W.D. Tex. 2006) (citing *Jackson v. Godwin,* 400 F.2d 529, 536 (5th Cir. 1968)).

[3] *Personalized License Plate Guidelines and Restrictions*, VIRGINIA DEP'T OF MOTOR VEHICLES, https://www.dmv.virginia.gov/vehicles/license-plates/personalized-policy (last visited Sept. 2, 2025). This Court can take judicial notice of the contents of government websites. *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

[4] *Id.*

2

The district court dismissed his claim without ever considering the contents of the character combination on Mr. Whateley's license plate because it held that all the 930,000+ "personalized messages" placed by drivers on their "personalized plates" were not personalized messages at all, but were actually the speech of the government of Virginia. Under the government speech doctrine, the district court held that Virginia could take any action it wished with regard to Mr. Whateley's license plate, regardless of its viewpoint or its contents.

In so holding, the district court incorrectly applied the Supreme Court's precedents on government speech. These precedents instruct courts to consider the history of the expression at issue, whether the government is reasonably perceived as being the speaker, and whether or not the government actively shapes and controls the message in question, and examine whether these factors suggest the speaker in question is a government or a private individual. *Shurtleff v. City of Bos.*, 596 U.S. 243, 252 (2022). Despite there being no evidence Virginia has *ever* sought to express a state message through the character combinations of license plates, and acknowledging the "paradox"[5] that most drivers would not reasonably perceive Virginia to be speaking through a driver's personalized license plate character combination, the district court held that these factors weighed in favor of a finding that Virginia was speaking through all of Virginia's personalized license plates. And

---

[5] JA23.

although Virginia does not create, suggest, or pre-screen (other than through cursory review for compliance with its guidelines) the license plate character combination of personalized plates, the district court held that the government had actively shaped and controlled the speech in question.

The Supreme Court case on which the district court most relied, *Walker v. Texas Division, Sons of Confederate Veterans* ("*Walker*"), 576 U.S. 200 (2015), dealt not with personalized license plates but with so-called "specialty license plates" in Texas. These specialty plates allow drivers to select among a pre-set number of options to replace the license plate design (*i.e.*, the graphics, slogans, and background of the license plate) rather than the character combination. Finding that Texas had a long history of speaking through these designs, the public would perceive the designs as Texas's speech, and Texas had exercised active control over them, the Court held that the license plate designs were government speech. As the district court noted, a majority of courts to consider *Walker*'s application to personalized license plate programs have held that the differences between these factors and the personalized license plate programs of most states lead to a different outcome for personalized license plate programs; those courts have held that personalized license plate programs are public forums for private speech protected by the First Amendment. *See* JA19 (collecting cases).

Despite none of the characteristics of *Walker* being present in Virginia's personalized license plate program, the district court found that *Walker* controlled and dismissed Mr. Whateley's case. In so doing, the district court erroneously held that the relevant message communicated by Mr. Whateley's license plate was not the character combination chosen by Mr. Whateley, but the statement "this vehicle is registered in this state." It further held that Virginia's history of issuing license plates as government IDs, the public perception of the license plates as being approved by Virginia, and Virginia's ability to control the license plates through its final approval authority all converged to prove that the messages on Mr. Whateley's personalized license plate were government speech.

The Supreme Court has held that the government speech doctrine is capable of significant misuse and that courts should avoid its "dangerous" expansion. *Matal v. Tam*, 582 U.S. 218, 235, 239 (2017). By dismissing Mr. Whateley's case on these grounds, the district court undertook just such a dangerous expansion of the government speech doctrine. Not only this, the district court deprived Mr. Whateley of his right to have his First Amendment case heard. To remedy this, this Court should vacate the district court's opinion, hold that Mr. Whateley's personalized license plate character combination is private speech, and remand for the district court to determine in the first instance 1) the nature of the public forum at issue; and

2) whether, under the governing standard for that public forum, the government has the right to restrict Mr. Whateley's speech.

## II.    Statement of the Facts

### A.    Virginia's Personalized License Plate Program

The Virginia DMV issues license plates to all drivers with cars registered in Virginia. By default, these license plates display a unique combination of seven letters and numbers that do not express any particular message, abbreviation, or word, except by chance. *See, e.g.,* JA8 ("THE7019"). Under Virginia law, the Commissioner of the DMV is authorized to "reserve license plates with certain registration numbers or letters or combinations thereof to persons requesting license plates so numbered and lettered." Va. Code § 46.2-726.

Pursuant to this authority, the DMV operates a program that allows registrants to request "personalized plates"[6] (the "Program").[7] For an annual fee of $10, anyone registering a car in Virginia can add a "personalized character combination" to their

---

[6] The district court referred throughout to Mr. Whateley's plates and other plates issued through the Program as "vanity plates." Though this is not a term used in Virginia's official documents, this brief will take its cue from the district court and use the terms "personalized plates" and "vanity plates" interchangeably.

[7] *Create a Plate*, VIRGINIA DEP'T OF MOTOR VEHICLES, https://www.dmv.virginia.gov/vehicles/license-plates/plate-create (last visited Sept. 2, 2025).

6

license plates of up to seven characters.[8] The Program invites registrants to "[c]reat[e] [their] personalized message" by using a combination of letters, numbers, and the special characters dash, space, and ampersand.[9]

The DMV identifies limited grounds for refusing license plate registration requests. First, the character combination must be unique to that license plate and not already in use.[10] Otherwise, the DMV's Policy identifies only two grounds on which to deny applications: first, violation of the "Guidelines for Issuing a Personalized License Plate" (the "Guidelines"); and second, if a vehicle owner or co-owner who is on the Sex Offender and Crimes Against Minors Registry Act has requested a plate combination that "can be read, interpreted, or understood to be a reference to children."[11] The DMV may subsequently cancel and recall a previously issued plate if it is alerted to a violation of its Policy through a citizen complaint or if changing usage renders a previously compliant plate in violation of the Guidelines.[12]

---

[8] *Id*.

[9] *Personalized Message Information*, VIRGINIA DEP'T OF MOTOR VEHICLES, https://www.dmv.virginia.gov/vehicles/license-plates/personalized-plate-policy (last visited Sept. 2, 2025).

[10] *Id*.

[11] *See supra* n.3. This last requirement is derived from Va. Code § 46.2-725.

[12] *Id*.

7

The Guidelines state that the DMV will not approve a character combination that "carries a connotation which may reasonably be seen by a person viewing the license plate as" any of the following: "Profane, obscene, or vulgar in nature;" "Sexually explicit or graphic;" "Excretory-related;" "Used to describe intimate body parts of genitals;" "Used to condone or encourage violence;" or "Used to describe illegal activities or illegal substances." In making this determination, the DMV is entitled to consider other material affixed to the car that would influence an observer of the license plate's character combination.[13]

The Program is incredibly popular. In April 2025, more than 930,000 personalized license plates were in use in Virginia, accounting for approximately 11% of all registered vehicles.[14] As of 2007, Virginia led the nation in the percentage of its cars that bore personalized plates, representing one tenth of the total personalized plates in the country.[15]

B.      Mr. Whateley's Personalized License Plate

Curtis Whateley is a resident of Virginia. In February 2023, Mr. Whateley applied to the Program and requested that the character combination "FTP&ATF"

---

[13] *Id*.

[14] *See supra*, n.2.

[15] Associated Press, *Va. drivers vainest of them all with their plates*, NBC NEWS (Nov. 11, 2007, 7:57 p.m. EST), https://www.nbcnews.com/id/wbna21742618.

appear on his personalized plates. JA8. His character combination was approved but was at first issued without the ampersand that Mr. Whateley had requested, so he visited the DMV to request corrected license plates. JA8. He received these corrected plates in May 2023. JA8. Mr. Whateley then drove using the plates with the character combination "FTP&ATF" for over a year without incident. JA8.

In May 2024, the DMV received an anonymous complaint that Mr. Whateley's license plate was "offensive" because "FTP&ATF" stands for "Fuck the Police & [the Department of] Alcohol, Tobacco, and Firearms." JA8. The following month, the DMV Personalized Plate Review Board voted to recall Mr. Whateley's plate because it violated the Guidelines that forbade character combinations reasonably perceived as "Profane, obscene, or vulgar in nature" and "Used to condone or encourage violence." JA8. Mr. Whateley was informed of this decision by letter the following month. JA8. He also received new license plates with the non-personalized character combination "THE7019," which he has since been using as his primary license plates. JA8.

Mr. Whateley sought to appeal this decision through an informal administrative hearing and a video hearing. JA8-9. Both appeals were denied. JA9.

### III.   Procedural History

Mr. Whateley filed his Complaint *pro se* in the U.S. District Court for the Western District of Virginia on January 24, 2025. JA4-11. He sought declaratory

and injunctive relief against Gerald Lackey in his official capacity as the Commissioner of the DMV, alleging that the DMV's actions in cancelling and recalling his personalized license plate violated his rights to free speech in violation of the First Amendment and due process in violation of the Fourteenth Amendment.

Commissioner Lackey moved to dismiss the Complaint under Federal Rule of Civil Procedure 12. JA12. The district court granted Commissioner Lackey's motion to dismiss on May 30, 2025. JA31. In so doing, the district court held that the Program and all the character combinations issued pursuant to it were government speech. JA14-30.

On June 30, 2025, Mr. Whateley timely filed his notice of appeal, appealing the dismissal of his First Amendment claim challenging the recall of his personalized license plate.[16] JA32.

## SUMMARY OF THE ARGUMENT

Two lines of precedent govern cases, like this one, that involve the intersection of private speech and public property. First, the "government speech doctrine" establishes when speech involving a private speaker is legally considered to be the government speaking on its own behalf. *Shurtleff*, 596 U.S. at 252. Second, the First

---

[16] Plaintiff does not appeal the dismissal of his due process claim. On appeal, he limits his argument solely to his § 1983 First Amendment claim for the denial of his free speech through the recall of his license plate.

10

Amendment public forum doctrine establishes how courts should examine balance the rights of *private* speech against the government's rights as a property owner when the private speech occurs on public property. *Warren v. Fairfax Cnty.*, 196 F.3d 186, 200–01 (4th Cir. 1999) (en banc). The Court had an opportunity to examine these two lines of precedent in *Walker*. In that case, the Court performed a close factual examination of Texas's specialty license plate program, including the government's long history of speaking through these specialty license plate designs, that led the Court to find the program was government speech.

Applying this body of law to Mr. Whateley's case illuminates the errors in the district court's opinion. The district court's primary error was to misconstrue the message of Mr. Whateley's personalized license plate. The channel of communication through which Mr. Whateley sought to express himself was the character combination of his license plate, which read "FTP&ATF." The district court found that this message was unimportant for purposes of Mr. Whateley's case and instead took the message of the license plate to be "this vehicle is registered with the state." This result cannot be squared with free speech case law.

The district court also erred in applying the test for government speech. This test, which is aimed at deciding if the government is attempting to express itself, focuses on three main factors: first, whether the history of the expression at issue suggests that it is private speech or government speech; second, whether the public

11

would reasonably perceive that expression as being on behalf of private parties or of the government; and third and "most salient," whether the government shaped or controlled the message contained in the expression. *Shurtleff*, 596 U.S. at 244-45. Applying its construction of the message at issue in this case, the district court found that all three factors weighed in favor of a finding of government speech. Considered properly, with Mr. Whateley's message as the expression at issue, the factors weigh the other direction, in favor of the message being Mr. Whateley's private speech.

The first factor weighs in favor of a finding of private speech because there is no history of the government of Virginia expressing itself through the character combination of any license plate identifier, personalized or otherwise. In cases like *Walker*, the government had previously spoken extensively through the channel of communication at issue (there, choosing the background graphics and slogans of its state license plates). In the absence of any such history, there is no reason to follow *Walker*'s holding here.

The second factor weighs in favor of a finding of private speech because a reasonable observer would not assume that the government of Virginia is speaking through the character combinations of personalized license plates. In the absence of a history of the government speech through a channel of communication, and with an extensive history of private parties using that channel of communication, no reasonable observer would assume that the text on a personalized license plate

12

expressed the government's own speech. In addition, the huge number of unrelated and contradictory messages would lead any reasonable observer to believe that the government is not seeking to express any message through the personalized text of Virginia license plates. And to the extent that additional evidence would help Mr. Whateley to prove it, the district court denied him the ability to develop that evidence by dismissing his case at the pleading stage.

Finally, the government of Virginia does not actively shape or control the character combinations of personalized license plates. A proper analysis of the text of the license plate shows that Mr. Whateley shaped and controlled that text when he requested a specific set of letters and numbers. The only control exercised by the government over this text was in applying a set of Guidelines aimed at preventing a handful of categories of indecent license plate messages from circulating. These Guidelines are similar to the kind of regulation that the government exercises over private speech in a number of settings and do not demonstrate any affirmative vision for what the message in the personalized license plate character combination is going to say.

Because the district court misapplied the law in holding that the character combination on personalized license plates is government speech, this Court should reverse the district court and hold that Virginia's personalized license plate character combinations are private speech in a public forum. Because this is a court of "review,

13

not first view,"[17] this Court should vacate the decision and remand this case to the district court to consider Mr. Whateley's First Amendment claim under the proper standard, including both the nature of the public forum created by Virginia's Program and whether Mr. Whateley's license plate text can be properly restricted by the government under the applicable legal standard.

## STANDARD OF REVIEW

This Court reviews a district court's decision granting a motion to dismiss *de novo*. *Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2025) (citing *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022)). This Court evaluates whether the complaint states a plausible claim for relief, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Id*. (citing *Harvey,* 48 F.4th at 268 & *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017)).

*Pro se* complaints are to be "liberally construed" and should not be dismissed unless "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Brown v. Brock*, 632 F. App'x 744, 746 (4th Cir. 2015) (quoting *De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003)).

---

[17] *Emps.' Innovative Network, LLC v. Bridgeport Benefits, Inc.*, 144 F.4th 571, 581 (4th Cir. 2025) (quoting *United States v. Avila*, 134 F.4th 244, 248 (4th Cir. 2025)).

## **ARGUMENT**

**I.      The Government-Speech Doctrine And Public Forum Law**

A.      The Government-Speech Doctrine

When the government speaks, it is free to express itself without abiding by the constraints of the First Amendment's Free Speech Clause. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("*Summum*"). The hallmark of government speech is that the government chooses a message that it wants to convey, since the government speech is meant to permit government to "speak for itself" and "select the views that it wants to express." *Id*. (citations omitted).

The government "may exercise this same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message." *Id*. By contrast, "the government does not have a free hand to regulate *private speech* on government property," and must abide by the First Amendment when it does so. *Id*. (emphasis added).

In order to determine if the government is speaking or if it is regulating private speech on government property, a court must conduct "a holistic inquiry," "driven by a case's context rather than the rote application of rigid factors." *Shurtleff*, 596 U.S. at 52. In *Shurtleff*, the Court identified three factors as being especially important to this inquiry: "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent

15

to which the government has actively shaped or controlled the expression." *Id.*; *accord Matal*, 582 U.S. at 237–39; *Walker*, 576 U.S. at 210-13; *Summum*, 555 U.S. at 470–72.

These factors may not all be of equal weight. For example, in *Shurtleff*, the Supreme Court considered whether or not a program allowing private groups to raise flags on government property was government speech. *See, generally*, 596 U.S. 243. The Court noted that some factors weighed in favor of a finding of government speech but found that "the most salient feature of [the] case" was "the extent to which [the government] actively controlled these flag raisings and shaped the messages the flags sent." *Id*. at 256.

Where government speech is not at issue, "members of the public have free speech rights on other types of government property and in certain other government programs that share essential attributes of a traditional public forum." *Summum,* 555 U.S. at 469. The standard governing this speech is discussed in the next section.

B.     Private Speech on Government Property and Public Forum Law

Not all speech that occurs on government property is government speech. When private speakers engage in speech on public property, the First Amendment limits the government's rights to abridge that speech. *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 196 (4th Cir. 2022). When private speech occurs on government property, the property in question is referred to as a

"forum" or a "public forum" and the body of law that governs these speech restrictions is called "forum analysis." *See Warren*, 196 F.3d at 197.

How much the government can regulate private speech depends on the nature of the forum in question. *Id*. at 190-91. Because the terminology around these different types of government property has evolved, it is easiest to begin by identifying the levels of scrutiny that are applied. There are two. The higher level of scrutiny is the familiar "strict scrutiny," requiring that restrictions on speech be "narrowly tailored to a compelling government interest." *Id*. at 193. The lesser standard only requires that the restriction on speech be "reasonable in light of the purpose of the forum" and "viewpoint-neutral." *Id*. at 192-93.

For two types of government property, both label and the level of scrutiny have been relatively consistent throughout the Supreme Court's forum analysis cases. The first, the "traditional public forum" (or, in some of its original incarnations, merely the "public forum"), includes public thoroughfares and areas traditionally open to the public without reservation. *Id*. at 193. In these forums, all restrictions on speech must meet strict scrutiny and be viewpoint-neutral. *Id*.

The second type of forum is a "non-public forum." In this kind of forum, the government acts as a proprietor, minding its internal affairs. *Id*. at 192-93. In such forums, all speech restrictions need only meet the lesser standard of being reasonable in light of the purpose of the forum and viewpoint-neutral. *Id.* Any government

17

property which is "not by tradition or designation a forum for public communication" is a "nonpublic forum." *White Coat Waste Project*, 35 F.4th at 196 (citing *Se. Promotions v. Conrad*, 420 U.S. 546, 555 (1975)).[18]

The confusion in forum analysis comes over the last two labels that are applied to forums: the "designated public forum" and the "limited public forum." *See id*. at 193-94. While there is some irregularity of usage, the basic difference is that a designated public forum is open to all speakers and all topics, and thus all speech restrictions must meet strict scrutiny. *Id*. In contrast, limited public forums are created as a forum specifically for private speech by a limited group of speakers and/or on a limited set of topics. *Id*. In these limited public forums, there is an "internal standard" for those speakers/subjects for whom the forum was created: restrictions of this speech must meet strict scrutiny. *Id*. The "external standard" refers to speakers whose identity or subject do not fall within the identified purpose of the forum; for them, the standard on speech is evaluated as if it had taken place in nonpublic forum. *Id*.[19]

---

[18] The confusion in the courts concerning these two kinds of fora has been referred to by this Court as a "morass." *White Coat Waste Project*, 35 F.4th at 196 n.13. This brief will refer to the Program as a "limited public forum" but acknowledges that many courts no longer distinguish between limited and nonpublic fora.

[19] The Supreme Court has, confusingly, in recent years taken to only identifying three types of forums (and sometimes collapsing the limited public forum into the nonpublic forum without mentioning the internal/external standard distinction),

The government property in question need not be a physical location, although it can be. *See, generally, Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 675 (1992). Government property as diverse as a public school mail system, *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46-47 (1983), a public university student-activity funding pool, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995), or a municipal bus advertising program, *White Coat Waste Project*, 35 F.4th at 197, can qualify as a public forum.

A court deduces the type of forum from the government's intent. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985); *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1152 (7th Cir. 1995) ("*Air Line Pilots*"). Intent is an objective test, consisting of 1) how the government has actually acted with regard to the speech on the property in question, and 2) the nature of the property itself and its compatibility with expressive activity. *Id*. at 1152-54.

When evaluating the nature of a forum, a court must define the forum "in terms of the access sought by the speaker." *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1069 (4th Cir. 2006) (quoting *Cornelius*, 473 U.S. at 801). If a speaker seeks "general access to public property, the forum

---

leading this Court to label the entire doctrine of forum analysis a "morass." *White Coat Waste Project*, 35 F.4th at 196 n.13.

encompasses that property." *Cornelius*, 473 U.S. at 800 (citing *Greer v. Spock*, 424 U.S. 828, 836 (1976)). Where a speaker seeks access to a narrower channel of communication, the relevant forum is appropriately tailored to that scope. *Id*. at 788-89 (rejecting argument that relevant forum was the federal workplace and holding the forum was a charitable giving program operated within that workplace).

One district court has already analyzed Virginia's Program and held that it is a public forum for private speech. *Pruitt v. Wilder*, 840 F. Supp. 414, 417–18 (E.D. Va. 1994) (permanently enjoining a Guideline that refused to issue character combinations referring to "deities"). Relying on more recent Supreme Court case law and a new construction of the relevant message in the personalized license plate, the district court in this case came to the opposite conclusion and held that the character combinations issued pursuant to the Program are government speech. *See* JA27. As laid out in more detail below, these newer precedents do not change the fundamental nature of the analysis. Accordingly, this Court should adopt the holding of *Pruitt* and reverse this district court's holding that character combinations issued pursuant to the Program are government speech.

C.      *Walker* and Texas's Specialty License Plate Program

Applying the interplay between the government speech doctrine and public forum law, the Supreme Court in 2015 considered whether Texas's program offering drivers their choices of a limited set of specialty license plate designs constituted

government speech, even though some of the designs were created by private nonprofits. *See, generally*, *Walker*, 527 U.S. 200. The case explicitly did not consider Texas's equivalent of Virginia's Program, which allowed registrants to request specific combinations of letters and numbers to display on their license plates. *Id*. at 204. As discussed below in Section III, the district court's failure to consider the differences in these programs was a leading cause of its erroneous dismissal of Mr. Whateley's case.

The Texas program involved the background designs of Texas "specialty" license plates and the message at the top or bottom of the license plate (where a state like Virginia says things like "Virginia is for Lovers" or New Hampshire says "Live Free or Die"). *Id*. at 204-05. These designs had historically been created only at the explicit instruction of the state of Texas. *Id*. at 205, 211-12. Texas had issued a number of license plate designs that "allow[ed] Texas to choose how to present itself and its constituency," such as plates reflecting Texas's educational institutions, its citrus industry, and the slogan "Fight Terrorism." *Id*. at 213.

Texas's specialty license program allowed nonprofits to submit proposals ("comprising slogans and graphics") to be considered as license plate designs. *Id*. at 205, 214. At the time of the case, Texas offered about 350 separate license plate designs. *Id*. at 233 (2015) (Alito, J., dissenting).

21

A group called the Sons of Confederate Veterans, Texas Division, submitted a design that included an image of a confederate flag. *Id*. at 206. After inviting public comment on the proposed plate through a website and at a public meeting, Texas's specialty license plate review board then held a vote on whether or not to accept the application, unanimously deciding not to issue it. *Id*. In so deciding, the Board cited that members of the public might find the design offensive and that such concerns were, in its opinion, "reasonable." *Id*.

The Court found that this program was government speech, not a public forum. *Id*. at 208-09. The Court noted the long history of states expressing themselves through license plate designs. *Id*. at 211-12. It also noted that the public identifies license plate designs with the state. *Id*. at 212 (citing *Summum*, 555 U.S. at 472). It also relied on the fact that Texas maintained "direct control" over the specialty plates, including approving each design proposal before it was issued. *Id*. at 213.

While the Court found that the specialty license plate program in *Walker* was government speech, it has since warned courts not to read *Walker* too expansively, noting that *Walker* "likely marks the outer bounds of the government-speech doctrine." *Matal*, 582 U.S. at 238. An expansive government speech doctrine "is susceptible to dangerous misuse" because "[i]f private speech could be passed off as

22

government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Id*.

A majority of courts applying *Walker* to personalized license plate programs have held that, unlike the specialty license plate designs at issue in *Walker*, the personalized license plate programs are public forums for private speech and that the messages conveyed in the license plates enjoyed First Amendment protection. *See Overington v. Fisher*, 733 F. Supp. 3d 339, 343 (D. Del. 2024); *Ogilvie v. Gordon*, 2020 WL 10963944, at *5 (N.D. Cal. July 8, 2020); *Carroll v. Craddock*, 494 F. Supp. 3d 158, 166 (D.R.I. 2020); *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019); *Kotler v. Webb*, 2019 WL 4635168, at *7 (C.D. Cal. Aug. 29, 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 148 A.3d 319, 325-26 (Md. 2016), *as corrected on reconsideration* (Dec. 6, 2016). In so holding, they joined a line of pre-*Walker* authority that had also held that personalized license plate programs were public forums for private speech, including enjoining viewpoint discrimination in Virginia's Program on that basis. *See, e.g., Pruitt*, 840 F. Supp. at 417 (applying forum analysis to Virginia's Program); *Byrne v. Rutledge*, 623 F.3d 46, 53–54 (2d Cir. 2010).

Three other courts have held that *Walker* establishes the messages on personalized license plates are government speech unprotected by the First Amendment, like the specialty license plate designs at issue in *Walker*. *Gilliam v.*

23

*Gerregano*, 2025 WL 617603, at \*12 (Tenn. Feb. 26, 2025), *cert. petition docketed*, 25-107 (S. Ct. July 29, 2025); *Odquina v. City of Honolulu*, 2022 WL 16715714, at \*9 (D. Haw. Nov. 4, 2022), *aff'd on other grounds*, 2023 WL 4234232 (9th Cir. June 28, 2023); *Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1204–05 (Ind. 2015). With its decision in this case, the district court became the fourth. *See* JA27.

## II. The Message of Mr. Whateley's Character Combination Was "FTP&ATF," Not "This Vehicle Is Registered With The State."

The character combination requested by Mr. Whateley for his license plate was "FTP&ATF." The expressive nature of this character combination is beyond question. Indeed, its message was so expressive that it sparked a Virginian to submit an anonymous complaint to the DMV calling it "most offensive." JA8. In terms of the government speech analysis, he was using a portion of the government property at issue—here, the character combination portion of the license plate—to "express [his] own views." *Cf. Shurtleff*, 596 U.S. at 248. Accordingly, it is natural to say that his "message" was expressed by the character combination he chose: "FTP&ATF." *See Hart*, 422 F. Supp. 3d at 1232 ("[V]anity plates convey a "personalized message with intrinsic meaning (sometimes clear, sometimes abstruse) that is independent of mere identification and specific to the owner.") (quoting *Mitchell*, 148 A.3d at 326).

One of the central errors the district court made was to misconstrue the message at issue in the case. Mr. Whateley brought this case challenging the

24

revocation of his personalized plate with the character combination "FTP&ATF", and, under both First Amendment and government speech precedents, that is the message that should have guided the district court's analysis. Instead, the district court held that license plates "serve a governmental purpose and communicate a governmental message: *this vehicle is registered with the state.*" JA20 (emphasis in original). The district court also held that this is, apparently, the sole message communicated across all Virginia license plates: "[l]icense plates are the government saying 'this car is registered,' vanity plate or not." JA21. "As to vanity plates, the fact that a person can customize the unique series of characters that make up the government's message does not change the message's general meaning." JA20.

The district court's analysis here cannot be squared with *Walker* or the Court's other precedents. *Walker* began its analysis of specialty license plates by focusing on what license plate designs "have conveyed more than state names and vehicle identification numbers," concluding that "they have long communicated messages from the States." 576 U.S. at 210. As examples of these messages, the Court specifically looks at those design elements with an expressive dimension, including graphics like New Hampshire's "Old Man of the Mountain" or state slogans such as "Keep Florida Green." *Id*. at 210-12. These messages are the "kind of state speech" that *Walker* found relevant when evaluating the license plate design. *Id*. at 212. If Mr. Whateley's license plate were appropriately construed as conveying the message

25

"this vehicle is registered with the state," surely the Court would have mentioned the same message in *Walker*, since it is no less true of Texas's license plates as it is of Virginia's. *See Kotler*, 2019 WL 4635168 at *7.

Nor is this the only problem with the district court's proposed message. Adopting "this vehicle is registered with the state" as the message of Mr. Whateley's license plate obscures, rather than illuminates, the allegations in his case. For example: why would the DMV recall Mr. Whateley's license plate if it communicated only this unobjectionable message? This message does not even arguably violate the DMV's Guidelines. And the district court maintains that this message does not change whether the license plate is "a vanity plate or not." JA21. Under the district court's analysis, the message of Mr. Whateley's personalized character combination "FTP&ATF" was the same as the message of his state-issued, non-expressive character combination "THE7019," *see* JA8, so there would be no need to substitute one for the other.

Even the district court cannot maintain this construction throughout its entire opinion. Acknowledging at places that Mr. Whateley has control over the "vanity plate message," JA24, the district court nonetheless dismisses the expressive dimension of this contribution as "secondary" to its preferred construction of the message, JA21, stating that "[p]rivate expression does not take the wheel merely because a private individual gets to choose the specific characters that make up the

26

message." JA21. But just because expression is "secondary" to some other use of government property does not make the expression unprotected under the First Amendment. For example, a school that opens its property to after-school activities by the public would surely find that activity secondary to its educational activities but the school still has to abide by the rules of public forum law in administering that after-school program. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). Nor do terms like "primary" and "secondary" guide the government speech inquiry. Even assuming that the expressive dimension of Mr. Whateley's character combination *could* be construed as "secondary," such a distinction does not answer the primary question of the government speech doctrine: who is speaking. *See Kotler*, 2019 WL 4635168, at *7 n.2.

Forum analysis confirms that the focus is properly on Mr. Whateley's character combination, not the primary function of the license plate. Under *Cornelius* and the Court's other forum precedents, the focus for forum analysis is on the "channel of communication" sought by the speaker. *Air Line Pilots*, 45 F.3d at 1152. In doing so, courts are instructed to look beyond the totality of the property in question—unless the speaker seeks access to the entire property. *Id*. Here, Mr. Whateley does not seek to express himself through the license plate design or any of its sub-elements, like the slogan or the graphics in the background of the plate. Because all he wants is control over the character combination on the license plate—

a form of expression that is available through a separate program, administered independently of the specialty plate program or the rest of the state's license plate activities. The district court should have directed its analysis at the content of the character combination and the message it contained.

The district court relied on its erroneous construction of Mr. Whateley's message most prominently in the first factor of its government speech analysis. *See* JA20-21. But its continued reliance on the status of license plates as "government IDs" in the test's second factor, JA22-23, and the absence of the district court's attempt to find any affirmative message expressed by the government in the third factor, *see* JA25-26, suggest that this error informed the entirety of the district court's analysis. For this reason alone, this Court should vacate the district court's opinion. However, because the district court also made errors in its government speech analysis, this Court should also proceed to analyze whether "FTP&ATF" is government speech and correct the district court's errors in this regard.

## III. Mr. Whateley's License Plate Character Combination Is Private Speech, Not Government Speech.

In evaluating whether a message is private speech or government speech, a court must engage in a holistic inquiry to determine who is speaking. This inquiry is guided primarily by three factors: the history of the expression at issue, the public perception of the expression at issue, and the government's role in shaping or controlling the message. *Shurtleff*, 596 U.S. at 252. No one factor is dispositive, and

28

the factors are not of equal importance. *Id*. at 256. Because all three factors weigh in favor of a finding that Mr. Whateley's personalized character combination is his private speech, this Court should vacate the district court's government speech holding and reverse.

> A.    The History of Personalized Character Combination Messages Like Mr. Whateley's Weighs In Favor of a Finding of Private Speech.

On the record before the Court at the motion-to-dismiss stage, there is no history of Virginia expressing itself through the character combinations of license plates. The only character combinations Virginia actually generates itself are arbitrary strings of characters like that of Mr. Whateley's replacement plates ("THE7019"). JA8. While useful for the non-expressive function of identifying cars, these random collections of letters and numbers fail to demonstrate that the state is "speaking." There is no evidence of Virginia intentionally generating character combinations that could be understood by other people to have any expressive dimension whatsoever. Nor is Virginia unusual in this regard. *See, e.g., Overington*, 733 F. Supp. 3d at 345 (finding same for Delaware).

There is, however, a record of individuals expressing themselves through the Program. The district court credited the Commissioner's submission that Virginia had been operating the Program for over 50 years. JA21; *see also Pruitt*, 840 F. Supp. at 415 (noting that Program had been in place since at least 1981). In addition, Mr. Whateley alleged that he requested a plate that contained a message. J8. The

29

large number of personalized plates on the road in Virginia[20] is further evidence that the Program is widely used and has been used to generate many personalized character combinations.

The difference between this history and the history of license plate designs considered in *Walker* could not be more stark. In *Walker*, the Court noted that states had been creating their own license plate designs since 1917, and Texas itself began including a graphic representing its identity as the Lone Star State as early as 1919. 576 U.S. at 211-12. The Texas Legislature had passed laws calling for the creation of specific license plates to commemorate Texan history or companies. *Id*. at 205, 212. It was only alongside these programs that Texas invited contributions to its design program from the public at all. *Id*. None of these facts from *Walker* are present in the current case. What appears instead is decades of unbroken private expression in Virginia's Program, with no efforts by the state to express any message through the character combinations at all. *Cf. Hart*, 422 F. Supp. 3d at 1232 ("[T]he Court disagrees that license plate *numbers*, separate and distinct from license plate *designs*, have historically been used to communicate messages from the State.") (citing *Walker*, 135 S. Ct. at 2248)).

The fact that the license plates in question are "government property issued for a governmental purpose," JA21, is not dispositive, as the district court would

---

[20] *Supra*, n.2.

have it be. Private speech occurs on government property with regularity; if it didn't, there would be no need for forum analysis. And the government's purpose for the license plate does not excuse a court from analyzing the expressive dimension of Mr. Whateley's expression. *See Kotler*, 2019 WL 4635168, at *7 n.2. The fact that the government generates revenue from the Program does not weigh the analysis either way; just as the government charging a fee for access to government property does not necessarily show an intent to invite private speech, *Walker*, 576 U.S. at 217-18, it also does not necessarily weigh against such an intent. *See Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1017 (D.C. Cir. 1988) (finding even if "the government's primary purpose" in operating government property "is to make a profit," that does not end the inquiry into government's intent to create a public forum).

Drawing all factual inferences in favor of Mr. Whateley, as this Court must at the motion-to-dismiss stage, this record weighs in favor of a finding that such personalized character combinations are *private*, not government, speech.

> B.     The Public Likely Perceives Personalized Character Combinations As Private Speech, Not Government Speech.

The Supreme Court's government speech precedents instruct a court to examine "the public's likely perception as to who (the government or a private person) is speaking" the expression at issue. *Shurtleff*, 596 U.S. at 252.

31

The public perception of who is speaking a message is undoubtedly entwined with the history of the expression at issue. In *Walker*, for example, Texas had long issued license plates bearing its own messages and continued to do so when it opened up its specialty design program to invite contributions from the public. 576 U.S. at 205. Knowing that some license plate designs in circulation were chosen by and speaking for the state of Texas, a reasonable observer would naturally suspect that a new license plate design was, or at least could be, another message from the state. *Id*. at 212. The observer could not be expected to untangle what was private speech from what was government speech.

But Virginia presents the opposite case with regard to personalized character combinations. As demonstrated in Section A above, the record presents half a century of personalized character combinations with *only* private individuals seeking to express messages through them. Knowing that only individuals can request such character combinations, an objective observer that saw a character combination different from Virginia's usual non-expressive character combination pattern would naturally expect that the message was requested by a private individual. There would be no reason to assume that, after decades of solely issuing such plates in response to requests by private persons, Virginia had suddenly begun sending out its own messages. *Carroll v. Craddock*, 494 F. Supp. 3d 158, 166 (D.R.I. 2020) ("[T]he general viewing public understands that, in contrast to [New Hampshire state slogan,

which appears as part of its license plate design] 'Live Free or Die,' the combination of letters and numbers in a vanity plate's message makes it apparent that 'the driver is the one speaking,' not the government.") (citing *Kotler*, 2019 WL 4635168, at *7) (footnote omitted). As noted above, 11% of vehicles in Virginia have personalized license plates.[21] This high percentage of personalized license plates also increase the likelihood that the public will have either owned a personalized plate, known someone who owned a personalized plate, or seen other personalized plates on the road. This familiarity makes it even more likely that the public will accurately assess that the character combinations were initiated by a private party.

The nature of the messages would help to confirm this. As in other jurisdictions, Virginia has undoubtedly issued license plates as contradictory as "TRYGOD" and "NOGOD," or "NOGAS" and "EATGAS." *Hart*, 422 F. Supp. 3d at 1231, 1233. An observer who attributed all of these messages to the government would undoubtedly conclude the government was "saying many contradictory things" and "babbling prodigiously and incoherently." *Matal*, 582 U.S. at 236 (finding this weighed in favor of a finding of private speech); *see also Overington*, 733 F. Supp. 3d at 346. The mere fact that an approval process exists for this speech, JA24-25, would not be enough to overcome this perception.

---

[21] *See supra,* n.2.

Even more seriously, if the government *is* perceived as speaking through the Program's hundreds of thousands of personalized character combinations, it will need to exclude many more messages than it currently does through the Guidelines. Government speakers, for example, are bound by the Establishment Clause not to endorse religion. *Summum*, 555 U.S. at 468. In the 1990s, apparently believing that the Program might be government speech, Virginia banned all references to "deities" in personalized character combinations and, pursuant to that policy, denied a requester the license plate "GODZGUD." *Pruitt*, 840 F. Supp. at 415–16. In enjoining the policy, the district court not only found that the speech at issue was private speech, not government speech, but that "if there were indeed an Establishment Clause problem, DMV would have to expand its policy to ban *all* religious references." *Id*. at 418 (emphasis added); *see also Shurtleff*, 596 U.S. at 250 (Boston city official refused to permit group to fly religious flag out of fear of Establishment Clause violation if the flag-flying were found to be government speech). Nor is this the only such speech restriction; among other things, ethics laws may prevent the state from endorsing commercial products whose names appear in personalized character combinations. Since Virginia currently sees no need to exclude these categories of speech from the Program, the Court can infer that the public has not regularly challenged personalized license plates on this basis—and that both the government and the public therefore reasonably perceive the

34

personalized character combinations as not being government speech. In fact, the only complaint we have in the record before the Court is one by another Virginia driver complaining *to* the government about Mr. Whateley's plate. JA8. The complaining citizen's actions make no sense if they perceived the character combination as being speech the government had adopted and claimed as its own. Rather, the citizen must have complained to the government because they were offended by *Mr. Whateley's* speech and they wanted the government to do something about it.

The district court acknowledged the "paradox inherent in concluding that highly personalized license plates speak for the state rather than the driver," but felt that *Walker* constrained it to such a holding. JA28. It does not. The nature of the Program here differs from the Texas specialty plate program in *Walker*. The license plate designs in *Walker* were in wide circulation, available to anyone who wanted to request one. 576 U.S. at 204-05. The personalized character combinations in Virginia are necessarily unique, such that only driver in the state can possess each combination.[22] The individualized nature of the message increases the likelihood that it will be attributed to the driver rather than the state. *See Mitchell*, 148 A.3d at 326 (contrasting "the unique, personalized messages communicated via vanity plates" with "the generic, depersonalized speech conveyed by a specialty plate").

---

[22] *See supra*, n.9.

This also explains why, unlike the *Walker* Court's observation that a license plate design could be replaced by a bumper sticker, that would not work with a personalized character combination: because it is unique, part of the point of having it is to be *the* person who has it and project that identity to the world.

The district court also relied on the fact that the government "strictly controls all other aspects of the license plates" other than the character combination to find that the public likely perceived the government to be the speaker here. JA23. But such control is much less relevant for a claim about the message of the character combination than it is about the design of the license plate. Just as people in a municipal bus system understand that advertising areas are marked out for private speakers, *White Coat Waste Project*, 35 F.4th at 197 n.14, drivers would understand that a government-issued license plate has a clear space for speech that is used by private parties. Unlike the license plate designs in *Walker*, there is no danger of the speech contribution by the person being blurred or merged with the remainder of the license plate as a whole. And while it is true that the words "Virginia" and "Virginia is for Lovers" appear on the plate next to the personalized character combination, JA23, "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal*, 582 U.S. at 235 (rejecting argument

36

that affixing government seal of approval to trademarks transformed them from private into government speech).

In finding that the public was likely to perceive the government as speaking through personalized character combinations, the district court placed great weight on the *Walker* Court's statement that license plates were "government IDs," and governments usually do not allow messages they disagree with on government IDs. JA9-10 (quoting *Walker*, 576 U.S. at 212). But as the following sentence of *Walker* makes clear, this statement is about "persons who observe *designs* on IDs" reasonably perceiving the government as speaking. 576 U.S. at 212 (emphasis added). So while it is true that governments do not allow private persons to design their own IDs or include their own slogans, this is not probative of the public's perception when parts of a government ID *are* opened up to the public's control, as they have been in Virginia through the Program. *See Shurtleff*, 596 U.S. at 255 (examining context because "even if the public would ordinarily associate a flag's message with [the government], that is not necessarily true for the flags at issue here.").

The Supreme Court's precedents have not made clear whether the public perception in question is a purely objective test or whether a party can introduce evidence to make a showing. The district court held there was no need to wait for any evidence, JA22, noting that the Court has analyzed this factor without specific

37

evidence on point. *See Walker*, 576 U.S. at 206, 212 (analyzing public's likely perception on a summary judgment record, but without specific evidence about members of the public's perceptions). But the "holistic" nature of the government speech inquiry, *Shurtleff*, 596 U.S. at 252, counsels that courts should consider such evidence. In one Tennessee case, the plaintiff introduced evidence that 87% of people understood personalized license plates, with 9% remaining unsure and only 4% believing that the character combinations in such text spoke for the government. *Gilliam v. Gerregano*, No. M2022-00083-SC-R11-CV, 2025 WL 617603, at *11 (Tenn. Feb. 26, 2025).[23] Such a lopsided survey result is, to begin with, strong evidence that the general public everywhere understands that personalized character combinations are private speech. But it is also indicative of the kind of evidence that Mr. Whateley was prevented from developing through discovery due to the premature dismissal of his case. To the extent that this Court finds there is

---

[23] The *Gilliam* court's objections to this study were not well-founded. The court objected that the study may have biased respondents by informing them that "license plates can be personalized with your own unique message"—even though this was the exact language Tennessee used to describe its own program on the website, and therefore properly part of the context of the public's perception. *Id*. at *3, *11. Further, the court criticized a study for lacking an option that the speech in question was both private *and* government. *Id*. at *11. But such a survey option would not have not tracked the Court's description of this factor, which presents a binary choice: whether "the government or a private person" is speaking. *Shurtleff*, 596 U.S. at 252.

insufficient evidence to decide this factor, that weighs in favor of reviving Mr. Whateley's case and permitting him to develop additional facts through discovery.

C.     The Government Has Failed to Shape or Control the Messages in Personalized Character Combinations.

The third factor in the government speech analysis – and the one that the Court in *Shurtleff* found "most salient" – is whether the government "actively controlled" or "shaped the messages" of the expression at issue. 596 U.S. at 256. Here, it did not.

At the outset, the government here has no role in "shaping the message" of the personalized character combinations. Private citizens like Mr. Whateley choose their own characters and numbers and enter them into the DMV website. There are no suggestions, pre-entered character combinations, or commissions issued to private persons. Thus, the Program already diverges from government speech like license plate designs commissioned by the Texas legislature, *Walker*, 576 U.S. at 205, 211-12, or those public monuments where municipalities established "prior submission requirements, design input, requested modifications, written criteria, and legislative approvals of specific content proposals." *Summum*, 555 U.S. at 472. Virginia does nothing to shape or control the initial proposal like these instances of government speech.

The inquiry then turns to whether Virginia exercised sufficient "active control" over the personalized character combinations after they were submitted.

39

This control must be "control over the . . . content and meaning" of the expression, which "would indicate that [the government] meant to convey the [expression's] messages." *Shurtleff*, 596 U.S. at 256. For example, in *Walker*, Texas's consideration of the license plate design at issue involved an individualized determination, a call for public comment, and a vote by the relevant board, based on the board members' own judgments that public concerns over the license plate were "reasonable." 576 U.S. at 206.[24] Similarly, in *Summum*, the government only selectively accepted monuments for placement on public property, exercising independent judgment about the aesthetics of placing a specific piece of art in a specific place. 555 U.S. at 471-72.

Virginia exercises nothing like this kind of active control over the personalized character combinations in the Program. The closest it comes is by requiring character combinations to conform with the Guidelines, which establish a series of prospective, generally-applicable rules laying out which character combinations are *not* permitted.[25] The Supreme Court rejected the argument that

---

[24] The district court adopts the dissent's view of the record in *Walker* in construing the majority's holding, stating that "Texas did not take care to approve only those proposed plates that convey messages the state supports." JA27 (citing *Walker*, 576 U.S. at 232 (Alito, J., dissenting)). But the facts as relied on by the majority do not bear this characterization, and it is the majority's construction of the law that is binding.

[25] *See supra*, n.3.

compliance with purely negative guidelines like these could support a finding of government speech, noting that "[w]ith the exception of the enforcement of [a bar on offensive terms], the viewpoint expressed by a mark has not played a role in the decision about whether to place it on the principal register." *Matal*, 582 U.S. at 238. Similarly, the Seventh Circuit found that a public university's use of keyword filters on a website comments section failed to show the active control necessary for government speech, noting that the filters "only suppress comments that happen to contain certain phrases or words" and "do not evaluate the substance of a comment to display only comments that convey University-approved messages." *Krasno v. Mnookin*, No. 22-3170, 2025 WL 2180825, at *9 (7th Cir. Aug. 1, 2025) (citing *Shurtleff*, 596 U.S. at 258). The Seventh Circuit distinguished this from the kind of active control that *would* qualify, such as actively "screen[ing] all comments prior to publication and then publish[ing] only those comments that aligned with the University's preferred image." *Id*. at *8-9. By only banning certain categories of messages it disapproves of, the government does not thereby "convey" an affirmative message, much less control its "content of meaning." *Cf. Shurtleff*, 596 U.S. at 256. Tolerating speech and endorsing it are two different things.

It is unsurprising that prospective guidelines like these are insufficient to establish government speech because many public forums (which, by definition, include private speech) have similar guidelines expressing what speakers *cannot* say;

courts do not therefore suggest that these regulations transform everything said on the government property into government speech. *See, e.g., Davison v. Rose*, 19 F.4th 626, 635–36 (4th Cir. 2021) (upholding a policy against comments that "are harassing or amount to a personal attack" in limited public forum); *see also Overington*, 733 F. Supp. 3d at 346 (concluding that "regulatory 'control' of the alphanumeric sequences on vanity plates does not reflect the control that a speaker exercises over their own speech, but only the control that governments exercise or attempt to exercise in a variety of other contexts."). If such guidelines were sufficient to turn the character combinations into government speech here, they should have been sufficient to do so in the forum cases, as well.

The district court maintained that that government's "ultimate editorial control over the messages" was dispositive of this factor, and "[w]hether the Commonwealth uses its discretion in a manner that is lax or heavy-handed, inconsistent or calculating, does not refute the underlying fact of its discretion." JA26-27. But this sort of formal possibility of control is not the "active control" the Court has required for purposes of this factor. *Shurtleff*, 596 U.S. at 252. Nor does it accord with forum analysis; as the Seventh Circuit has noted "discretionary enforcement of an effectively inoperative policy" cannot be invoked to show a government intent to limit a public forum's scope. *Air Line Pilots*, 45 F.3d at 1153. Stating that the government has the possibility of "ultimate editorial control" is just

42

another way of stating that the government is the owner of the property in question, and that is a given in public forum cases; it does nothing to determine *who* is speaking.

There is simply no way, on this record, to demonstrate that Virginia "actively controlled" the "content and meaning" of over 930,000 separate license plate messages in service of a coherent, affirmative vision of the state. *See Kotler*, 2019 WL 4635168, at *7 (noting the "hundreds of thousands of personalized license plates on California's roads" and that "[t]o suggest that the state has somehow meticulously curated the message of each of these plates, or of license plates in general, is nonsensical."). The huge number of messages distinguishes the Program from the "limited" number of public monuments in *Summum*, 555 U.S. at 478-79, or the relatively small 350 specialty license designs (not all of which were submitted pursuant to the private nonprofit design program) in *Walker*. 576 U.S. at 221 (Alito, J., dissenting). In fact, the Court has noted that the public forum doctrine was best applied "in situations in which government-owned property or a government program was capable of accommodating a large number of public speakers without defeating the essential function of the land or the program," while the "limited number of permanent monuments" and the attendant "selective receptivity" of the government were characteristic of government speech. *Summum*, 555 U.S. at 471, 478. The Program, with no principled upper limit to how many speakers participate

43

and nearly a million separate messages already circulating, bears more these characteristics of an expansive public forum governing private speech of a large crowd of speakers than it does the small, manageable government speech programs in *Summum* and *Walker*.

Virginia's failure to take ownership of the personalized character combinations also distinguishes this case from *Walker* and is probative of the government's lack of control. In *Walker*, once Texas accepted the license plate designs submitted by the public for inclusion in its specialty plate program, ownership of the design transferred from the public to Texas. 576 U.S. at 216. Similarly, in *Summum*, the government took ownership of the monument that was donated, and the monument thereafter became government property. 555 U.S. at 473. This transfer of ownership is not just a symbolic gesture; it also indicates an intent to continue using both the design and the monument to express the government's speech once the connection with the original creator has been stripped away. As the district court noted, the record in this case contains no indication that Virginia seeks ownership over the messages in the personalized character combinations. JA23. Under the terms of the Program as laid out in the DMV's website, the character combinations will only be displayed for as long as they are requested and paid for by the member of the public and will then lapse (unless

44

another private speaker subsequently adopts that message as their own).[26] This appears much more like the "transitory expressive acts" on government property that the Court distinguished from "display of a permanent monument" in *Summum*. 555 U.S. at 464; *see also id.* at 479. Similarly, the trademarks registered in *Matal* were private speech partly because they shared the same characteristics of being initiated and paid for by private parties and subsequently terminated when that party's use for them was at an end. 582 U.S. at 235-36. Such an end to the message severs the link with the government's asserted active control and, in combination with the other characteristics above, shows that this factor weighs in favor of a finding of private speech. While no one factor is dispositive of the "holistic" government speech analysis, *Shurtleff*, 596 U.S. at 252, where all three factors favor one outcome, the Court's role is clear.

The Supreme Court has warned that the government speech doctrine is subject to "dangerous misuse." *Matal*, 582 U.S. at 235. Without the protections of the First Amendment and public forum law, registration requirements could all too quickly become covers for viewpoint discrimination. *Id*. By holding that the Program is government speech, the district court deprived not only Mr. Whateley but hundreds of thousands of other Virginians of the protections owed to them by the First

---

[26] *See supra*, n.7 (describing $10 fee as "annual").

45

Amendment. This Court should take the opportunity to correct that error and restore those protections to the drivers of Virginia.

## IV.     This Court Should Vacate The District Court's Order And Remand For Further Proceedings.

Because the district court erred in holding that the text on Mr. Whateley's personalized license plate was government speech, this Court should vacate the district court's order below and hold that the text was instead private speech. *See, generally,* Section II *supra*.

The next step of the analysis would be to determine what type of public forum Virginia has established in the Program, which would determine the appropriate level of scrutiny to apply to Mr. Whateley's character combination request. *See* Part I(B), *supra*. But this is a Court of "review, not first view." *Emps.' Innovative Network, LLC*, 144 F.4th at 581. This Court should therefore remand for further findings "without considering whether the record could have supported the required finding under the correct legal standard." *United States v. Avila*, 134 F.4th 244, 248 (4th Cir. 2025); *see also Reeves v. Meddings*, No. 21-2391, 2022 WL 17091862, at *6 (4th Cir. Nov. 21, 2022) ("[W]e follow our usual practice and remand to the district court to address in the first instance whether, under the correct standard, [the defendant] is entitled to" a dismissal).

Such a remand is especially appropriate here because many factual questions remain to be resolved. Specifically, the district court has two questions to resolve

46

once the speech at issue in this case is properly identified as private speech: first, what is the nature of the forum in which Mr. Whateley's speech is taking place (i.e., is the Program a designated public forum, limited public forum, or nonpublic forum); and second, can the government constitutionally restrict Mr. Whateley's requested license plate text of "FTP&ATF" under the legal standard applicable to that forum.

Each of these questions is factually intensive and better resolved at summary judgment than on a motion to dismiss. Courts considering different personalized license plate programs have come to different conclusions about the type of public forum appropriate to the programs. *See Pruitt*, 840 F. Supp. at 417 & n.1 (noting dispute between the parties over whether Virginia's personalized license plate program was a "public forum" or a "nonpublic forum"); *Lewis v. Wilson*, 253 F.3d 1077, 1079 (8th Cir. 2001) (suggesting that level of scrutiny for personalized license plate program should be higher than that of nonpublic forum); *Hart*, 422 F. Supp. 3d at 1233 (noting arguments that personalized license plate program is limited public forum and nonpublic forum, and holding that it is nonpublic forum). An "inquiry into the nature of a forum raises factual issues about policy and practices in ascertaining the government's intent" and therefore should not be resolved at the motion-to-dismiss stage. *Stewart*, 863 F.2d at 1021. Similarly, whether or not Mr. Whateley's character combination is justified under the applicable level of scrutiny is a factual determination that is ill-suited to a pre-discovery posture. *See United*

47

*States v. Moore*, No. 2:22-PO-289, 2023 WL 5487340, at \*4 (E.D. Cal. Aug. 24, 2023) (concluding that whether challenged speech "restrictions are reasonable in light of the purpose of the forum is a determination best made on the basis of a factual record"). In a pre-discovery posture, it would be premature for this Court to rule on these factually intensive questions.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's order granting Commissioner Lackey's motion to dismiss, hold that Mr. Whateley's personalized license plate text was private speech, and remand this case to the district court for further proceedings.

48

## **REQUEST FOR ORAL ARGUMENT**

This case involves novel and significant legal issues concerning the fundamental right to free speech guaranteed by the U.S. Constitution. Because the complexity and importance of these issues would benefit from a full hearing before this Court, Plaintiff–Appellant respectfully requests oral argument pursuant to Local Rule 34(a).

Dated:        September 2, 2025                Respectfully submitted,

*/s/ Matthew W. Callahan*
Matthew W. Callahan, VSB #99823
Eden B. Heilman, VSB #93554
ACLU of Virginia Foundation
P.O. Box 26464
Richmond, VA 23261
(804) 523-2146
mcallahan@acluva.org
eheilman@acluva.org

*Attorneys for Plaintiff-Appellant*

49

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits of Fed. R. App. R 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. R 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains 11,395 words as determined by the word processing program used to prepare the document.

2.    This brief complies with the typeface and type style requirements because it was prepared in a proportionally-spaced typeface using Microsoft Word for Mac Version 16.64 in 14-point Times New Roman.


Date:  September 2, 2025                    */s/ Matthew W. Callahan*

                                           *Attorney for Plaintiff-Appellant*


50