No. 25-1751

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CURTIS M. WHATELEY,

*Plaintiff – Appellant,*

v.

GERALD F. LACKEY, Ph.D., in his official capacity as
Commissioner of the Virginia Department of Motor Vehicles,

*Defendant – Appellee.*

On Appeal from the United States District Court
for the Western District of Virginia

## RESPONSE BRIEF OF APPELLEE

JASON S. MIYARES
  *Attorney General*

JANET W. BAUGH
  *Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

November 3, 2025

KEVIN M. GALLAGHER
  *Solicitor General*

GRAHAM K. BRYANT
  *Principal Deputy Solicitor General*

MEREDITH L. BAKER
  *Deputy Solicitor General*

LEAH J. DEFAZIO
  *Assistant Solicitor General*

*Counsel for Defendant-Appellee*

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION...........................................................................................1

ISSUE PRESENTED .....................................................................................2

STATEMENT .................................................................................................2

    I.    Factual Background.................................................................2

    II.   Procedural History..................................................................7

STANDARD OF REVIEW..............................................................................10

SUMMARY OF ARGUMENT.........................................................................10

ARGUMENT ................................................................................................11

    I.    License plates (and their registration numbers) have historically conveyed a government message ........................13

    II.   The public perceives license plates (and their registration numbers) as government speech ...........................................21

        A.    The public associates the registration numbers on Virginia license plates with the government because the characters are a government identifier...................21

        B.    Whateley's arguments to the contrary fail ....................25

    III.  The Commonwealth maintains direct control over registration numbers on license plates .................................32

CONCLUSION .............................................................................................41

CERTIFICATE OF COMPLIANCE..........................................................43

CERTIFICATE OF SERVICE.......................................................................44

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Tennyson,*
    815 F.3d 183 (4th Cir. 2016) .................................................................. 13

*Anand v. Ocwen Loan Servicing, LLC,*
    754 F.3d 195 (4th Cir. 2014) .................................................................. 10

*Bernstein v. U.S. Dep't of State,*
    922 F. Supp. 1426 (N.D. Cal. 1996) ...................................................... 16

*Commissioner of Ind. Bureau of Motor Vehicles v. Vawter,*
    45 N.E.3d 1200 (Ind. 2015) .................................................................. 14

*Gilliam v. Gerregano,*
    __ S.W.3d __, 2025 WL 617603 (Tenn. Feb. 26, 2025) ............... *passim*

*Goines v. Valley Cmty. Servs. Bd.,*
    822 F.3d 159 (4th Cir. 2016) .................................................................. 10

*Johanns v. Livestock Mktg. Ass'n,*
    544 U.S. 550 (2005) ................................................................................ 33

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ................................................................................ 31

*Matal v. Tam,*
    582 U.S. 218 (2017) ...................................................................... *passim*

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................ 10

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009) ...................................................................... *passim*

*Pruitt v. Wilder,*
    840 F. Supp. 414 (E.D. Va. 1994) ........................................................ 31

*SAS Assocs. 1, LLC v. City Council for the City of Chesapeake*,
    91 F.4th 715 (4th Cir. 2024) ..................................................... 10

*Shurtleff v. City of Boston, Mass.*,
    596 U.S. 243 (2022) .......................................................... *passim*

*United States v. Ellison*,
    462 F.3d 557 (6th Cir. 2006) ................................................ 14

*United States v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) .................................................. 3

*United States v. Lavabit, LLC (In re Under Seal)*,
    749 F.3d 276 (4th Cir. 2014) ............................................ 29, 30

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ................................................. 15

*Vista-Graphics, Inc. v. Virginia DOT*,
    682 Fed. Appx. 231 (4th Cir. 2017) ...................................... 38

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) .......................................................... *passim*

## Statutes

1906 Va. Acts ch. 299 .......................................................... 2, 16

1972 Va. Acts ch. 427 .......................................................... 4, 16

Va. Code § 46.2-711 ...................................................... 2, 14, 23

Va. Code § 46.2-712 .................................................. 2, 3, 22, 33

Va. Code § 46.2-713 ........................................................ 23, 37

Va. Code § 46.2-714 ............................................................. 23

Va. Code § 46.2-715 ............................................................. 14

Va. Code § 46.2-726 .................................................. 4, 5, 37, 40

Va. Code § 46.2-2139 .................................................................. 37

## Other Authorities

*Create a Plate*, Va. Dep't of Motor Vehicles,
  https://tinyurl.com/3pcsxayd (last visited Nov. 3, 2025) .................. 4, 5

*Custom Plate Search Information: Passenger Standard
  Issue*, Va. Dep't of Motor Vehicles,
  https://tinyurl.com/5n8ayvkm (last visited Nov. 3, 2025) ...... 2, 3, 5, 23

Federal Rule of Civil Procedure 12(b)(6) ............................................ 10

*Law Enforcement Use of Automatic License Plate
  Recognition (ALPR)*, Va. State Crime Comm'n (2024),
  https://tinyurl.com/37yputhu .......................................................... 3

*License Plate Application*, Va. Dep't of Motor Vehicles (July
  1, 2024), https://tinyurl.com/46ps6dfs ...................................... 5, 6, 34

*License Plate Recognition (LPR)*, Old Dominion Univ. (Dec.
  14, 2018), https://tinyurl.com/3vv9b322 .............................................. 4

*Personalized License Plate Guidelines and Restrictions*, Va.
  Dep't of Motor Vehicles, https://tinyurl.com/4yaftm3z (last
  visited Nov. 3, 2025) ...................................................................... 5, 6

*Personalized Message Information*, Virginia Dep't of Motor
  Vehicles, https://tinyurl.com/2e2ma9p9 (last visited Nov.
  3, 2025) ................................................................................. 33, 34

*Search/View Specialized License Plates*, Va. Dep't of Motor
  Vehicles, https://tinyurl.com/2cxtxvae (last visited Nov. 3,
  2025) ............................................................................................. 23

*Toll Transaction Data Feasibility Report*, Va. Dep't of
  Transp. (Aug. 21, 2018), https://tinyurl.com/3a9mxkr5 ...................... 3

*Use of Automatic License Plate Recognition (ALPR) Systems
  – Policy*, City of Williamsburg,
  https://tinyurl.com/3vsdt3r9 (last visited Nov. 3, 2025) ...................... 4

## INTRODUCTION

The district court correctly determined that Virginia license plates, which are the Commonwealth's property and contain a unique character combination identifying the specific motor vehicle on which they must be displayed, constitute government speech even when a customer requests a personalized character combination. This conclusion naturally flows from both the purpose of license plates—providing a unique identifier for every registered motor vehicle to facilitate law enforcement—and Supreme Court precedent.

In *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015), the Supreme Court held that license plate designs are government speech and are not subject to the First Amendment. The Court's holdings in *Walker* are just as applicable to license plate character combinations as they are to license plate designs. As with the license plate designs considered in *Walker*, the history, public perception, and government control of license plate character combinations all demonstrate that these character combinations are government speech. Accordingly, *Walker* controls and necessitates a holding that the character combinations on license plates are government speech.

This Court should affirm the district court's judgment.

## ISSUE PRESENTED

Whether the district court correctly dismissed Whateley's First Amendment claim because the registration numbers on Virginia license plates constitute government speech.

## STATEMENT

### I.    Factual Background

Since 1906, Virginia has required all drivers to display identifying license plates on their motor vehicles. See 1906 Va. Acts ch. 299; Va. Code § 46.2-711 (current statute requiring license plates in Virginia). Today, these plates have several distinctive features. The word "Virginia" sits at the top of the plate, the phrase "Virginia is for Lovers" is found toward the bottom of the plate, and a link to the Commonwealth's website, "Virginia.org," is on the bottom right of the plate. See JA23; Va. Code § 46.2-712(A) (requiring a license plate to display "the name of the Commonwealth"); *Custom Plate Search Information: Passenger Standard Is-*

2

*sue*, Va. Dep't of Motor Vehicles, https://tinyurl.com/5n8ayvkm (last visited Nov. 3, 2025) [hereinafter *Passenger Standard Issue*].[1] In the middle, the license plate "display[s] the registration number assigned to the motor vehicle, trailer, or semitrailer and to the owner thereof." Va. Code § 46.2-712(A). Virginia's standard license plate contains an alphanumeric character combination as this "registration number." See *Passenger Standard Issue*; Whateley Br. 29 (discussing the "random collections of letters and numbers" on standard plates).

The purpose of this "registration number" is identification. For instance, toll booths in Virginia are equipped with cameras to capture license plates for video billing. See *Toll Transaction Data Feasibility Report* at 5–6, Va. Dep't of Transp. (Aug. 21, 2018), https://tinyurl.com/3a9mxkr5. Police use automatic license plate readers to identify vehicles of interest and assist in investigations. See *Law Enforcement Use of Automatic License Plate Recognition (ALPR)* at 9–11, Va.

---

[1] This Court "routinely take[s] judicial notice of information contained on state and federal government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017); see also Whateley Br. 2 n.3 (requesting judicial notice of government websites).

3

State Crime Comm'n (2024), https://tinyurl.com/37yputhu. And municipalities and universities in the Commonwealth use license plate readers for parking enforcement, with some using the license plate itself as the parking permit for paid parking facilities. See *Use of Automatic License Plate Recognition (ALPR) Systems – Policy*, City of Williamsburg, https://tinyurl.com/3vsdt3r9 (last visited Nov. 3, 2025); *License Plate Recognition (LPR)*, Old Dominion Univ. (Dec. 14, 2018), https://tinyurl.com/3vv9b322.

Since the 1970s, Virginia has also provided drivers with the opportunity to personalize the identifying character combination through its Personalized License Plate Program (the Program). See 1972 Va. Acts ch. 427; Va. Code § 46.2-726 (current statute providing the Commissioner of the Virginia Department of Motor Vehicles (DMV) with discretion to issue personalized license plates). Virginians can complete this process by submitting an online form that allows them to view the availability of the character combination they desire and purchase a personalized plate (sometimes referred to as a vanity plate). See *Create a Plate*, Va. Dep't of Motor Vehicles, https://tinyurl.com/3pcsxayd (last visited Nov. 3, 2025)

[hereinafter *Create a Plate*];[2] *Walker*, 576 U.S. at 204 (describing "personalized plates (also known as vanity plates)"). Such vanity plates are available for a $10 annual fee. *Passenger Standard Issue*.

Because the registration numbers are unique government identifiers, Virginia regulates what personalized combinations are available. For instance, personalized registration numbers must adhere to the same basic format as those used on all other types of Virginia license plates, including standard-issue plates; they cannot be more than seven-and-a-half characters long;[3] and they must be unique. See *License Plate Application*, Va. Dep't of Motor Vehicles, at 2 (July 1, 2024), https://tinyurl.com/46ps6dfs; *Personalized License Plate Guidelines and Restrictions*, Va. Dep't of Motor Vehicles, https://tinyurl.com/4yaftm3z (last visited Nov. 3, 2025) [hereinafter *Virginia Personalized Plate Guidelines*]. And Virginia law prohibits the DMV from issuing personalized license plates referencing children to registered sex offenders. Va. Code § 46.2-726.

---

[2] Virginians can also fill out a paper license plate application form and purchase the plate either by mail or at a DMV customer service center. See *Create a Plate*.

[3] Pursuant to DMV guidelines, the only characters that qualify as a half-character are a space and a dash.

The DMV also screens all applications and rejects character combinations that do not fall within its guidelines for issuing a vanity license plate (the DMV Guidelines). See *License Plate Application*; *Virginia Personalized Plate Guidelines*. The DMV Guidelines prohibit the following:

> Any combination of characters that in any way carries a connotation which may reasonably be seen by a person viewing the license plate as:
>
> - Profane, obscene, or vulgar in nature
> - Sexually explicit or graphic
> - Excretory-related
> - Used to describe intimate body parts or genitals
> - Used to condone or encourage violence
> - Used to describe illegal activities or illegal substances

*Virginia Personalized Plate Guidelines*. If at any point the DMV determines that a license plate it previously issued violates the DMV Guidelines, it may recall the plate. See *id.*

Curtis Whateley requested a personalized plate with the characters "FTP&ATF" through the Program. JA8. The DMV issued him the license plate, and he displayed the plate on his vehicle for some time. JA8. Eventually, a Virginia citizen filed a complaint with the DMV regarding Whateley's license plate, stating that the license plate was offensive because "FTP&ATF" stood for "Fuck The Police & Alcohol Tobacco and Firearms." JA6, JA8. Upon review of the complaint, the DMV Personalized

6

License Plate Review Board voted to recall Whateley's plate because "it could be reasonably viewed as Profane, Obscene or Vulgar in nature and used to condone or encourage Violence." JA8.

The DMV sent Whateley a letter notifying him that his plate was recalled and providing a new set of standard license plates. JA8. Whateley began using the new plates but appealed the recall decision through the DMV. JA8. The DMV held a hearing in which Whateley appeared. JA9. The DMV then upheld the decision to revoke Whateley's plates. JA9.

## II.    Procedural History

Whateley sued in federal court, alleging that the Commissioner's decision to recall his personalized plate violated his First Amendment right to free speech.[4] JA4–11. The Commissioner filed a motion to dismiss Whateley's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). JA12. The district court granted the Commissioner's motion to dismiss, holding that personalized plates are government speech and are not protected by the First Amendment. JA27, JA31. Relying on the Supreme Court's decision in *Walker*, the district court applied three factors to

---

[4] Whateley also alleged that the recall of the plate violated his Fourteenth Amendment due process rights, JA6, but that claim is not at issue in this appeal, see Whateley Br. 10 n.16.

7

"guide the government speech inquiry": "(1) the history of the expression at issue; (2) the public's likely perception as to who (the government or a private person) is speaking; and (3) the extent to which the government has actively shaped or controlled the expression." JA18 (quotation marks omitted).

Applying the first factor, the district court concluded that the history of license plates generally and personalized plates specifically indicates that they "serve a governmental purpose and communicate a governmental message: this vehicle is registered with the state." JA20 (emphasis omitted). The fact "that a person can customize the unique series of characters that make up the government's message," the court reasoned, "does not change the message's general meaning." JA20; see also JA21 ("License plates are the government saying 'this car is registered,' vanity plate or not."). The court emphasized that "[p]rivate expression does not take the wheel merely because a private individual gets to choose the specific characters that make up the message." JA21.

Second, the district court noted that the Supreme Court in *Walker* "(although dealing with specialty plates, not vanity plates) heavily emphasized that license plates <u>in general</u> are 'essentially government IDs,'

8

such that all license plates must be 'closely identified in the public mind with the State.'" JA22 (quoting *Walker*, 576 U.S. at 212). The court found that analysis "particularly illustrative." JA22. In fact, the court noted that the Supreme Court's "binding conclusion" in *Walker* was that "because the public understands that license plates are government IDs," "the public invariably associates license plates with the government." JA24 (emphasis omitted).

Finally, the district court held that, through the DMV Guidelines and plate-approval process, "the Commonwealth exercises ultimate editorial control over the messages displayed on vanity plates." JA25–27. That "editorial control and final approval authority allows Virginia 'to choose how to present itself and its constituency.'" JA26–27 (quoting *Walker*, 576 U.S. at 213). Accordingly, the district court concluded that Virginia's personalized plates are government speech and that Whateley's First Amendment arguments necessarily failed. JA27. The court dismissed Whateley's complaint, JA30, and Whateley then appealed to this Court. JA32.

9

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *SAS Assocs. 1, LLC v. City Council for the City of Chesapeake*, 91 F.4th 715, 719 (4th Cir. 2024). A Rule 12(b)(6) motion challenges the "sufficiency of a complaint," and this Court's review is "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). This Court accepts as true "the facts alleged in the complaint," but not "legal conclusion[s] couched as" factual allegations. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## SUMMARY OF ARGUMENT

Each factor in the Supreme Court's three-factor inquiry established in *Walker* weighs in favor of holding that the character combinations on Virginia license plates communicate government speech. First, the history of license plates in Virginia demonstrates that the character combinations on license plates convey a governmental message. From their inception through the present, license plates have served the primary purpose of identifying vehicles. Thus, they convey the governmental message that "this vehicle is registered with the state." JA20 (emphasis omitted).

10

Second, the public perceives the government as speaking through license plates because of their governmental nature. They are government IDs that are strictly regulated by the Commonwealth, owned by the Commonwealth, and required by the Commonwealth. Thus, the public inextricably associates the speech they contain with the Commonwealth.

Third, the Commonwealth exercises active control over the character combinations on personalized license plates. It has issued guidelines regarding their content, screens personalized plate applications, and denies or recalls character combinations that violate the DMV Guidelines. This reflects that the Commonwealth retains final approval authority over the character combinations and is actively involved in curating them. Such control is indicative of government speech.

Because all three factors demonstrate that character combinations on personalized license plates are government speech, this Court should affirm the district court's judgment dismissing Whateley's complaint.

## ARGUMENT

The district court correctly concluded that Whateley's First Amendment claim fails because license plate registration numbers are govern-

11

ment speech. These numbers serve a governmental purpose and communicate a governmental message, the public views license plates as government speech, and the Commonwealth retains control of the message on the plates. This Court should therefore affirm.

"The First Amendment prohibits Congress and other government entities and actors from 'abridging the freedom of speech,'" but it "does not say that Congress and other government entities must abridge their own ability to speak freely." *Matal v. Tam*, 582 U.S. 218, 234 (2017). Thus, "[w]hen government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker*, 576 U.S. at 207. "Were the Free Speech Clause interpreted otherwise, government would not work." *Ibid.*; see also *Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2009) ("[I]t is not easy to imagine how government could function if it lacked [the] freedom [to determine the content of its own speech].").

Courts "conduct a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression." *Shurtleff v. City of Bos. Mass.*, 596 U.S. 243, 252 (2022). The Su-

12

preme Court has identified three factors to "guide the analysis": "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Ibid.* (citing *Walker*, 576 U.S. at 209–14). Here, all three factors demonstrate that the license plate registration numbers are government speech. The First Amendment therefore does not apply to Virginia vanity license plates.

## I.  License plates (and their registration numbers) have historically conveyed a government message

Both license plates and their registration numbers have historically conveyed a government message. As the Supreme Court noted in *Walker*, "the history of license plates shows that, insofar as license plates have conveyed more than state names and vehicle identification numbers, they long have communicated messages from the States." 576 U.S. at 210–11.

The district court correctly recognized that license plates "serve a governmental purpose and communicate a governmental message." JA20. License plates are "government-mandated, government-controlled, and government-issued IDs that have traditionally been used as a medium for government speech." *Walker*, 576 U.S. at 214; see also *ACLU*

13

*v. Tennyson*, 815 F.3d 183, 185 (4th Cir. 2016) (applying *Walker* to hold that a State's license-plate designs were government speech). "License plates originated solely as a means of identifying vehicles," *Walker*, 576 U.S. at 223 (Alito, J., dissenting), and thus the primary function of license plates is vehicle identification, see *id.* at 212 (majority opinion) ("Each Texas license plate is a government article serving the governmental purposes of vehicle registration and identification."). In Virginia, state law requires drivers to register their automobiles with the Commonwealth and display a Virginia license plate on the front and back of their vehicles for identification. Va. Code §§ 46.2-711(A), (F); 46.2-715. But for this function, license plates would not exist.

The license plate registration number plays a key role in vehicle identification. "The very purpose of a license plate number . . . is to provide identifying information to law enforcement officials and others." *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006); see also *Commissioner of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1204 (Ind. 2015) (license plate registration numbers have historically served as state-approved "identifiers for public, law enforcement, and administrative purposes"); see pp. 3–4, *supra*.

14

Further, as the *Walker* Court held, license plates "long have communicated messages from the States." *Walker*, 576 U.S. at 211. License plates communicate the message that "this vehicle is registered with the state." JA20 (emphasis omitted). And registration numbers "communicate[] to law enforcement and members of the public that the number can be used to identify the vehicle." *Gilliam v. Gerregano*, __ S.W.3d __, 2025 WL 617603, at *8 (Tenn. Feb. 26, 2025). Indeed, even the four-justice dissent in *Walker*—which would have held that Texas's specialty license-plate designs were private speech—stated that license plate registration numbers are "unquestionably" government speech. *Walker*, 576 U.S. at 222 (Alito, J., dissenting) (observing that "the numbers and/or letters identifying the vehicle" on the license plate are "unquestionably . . . government speech").

This identifying message serves a functional purpose, but functional speech still counts as speech. Even "dry information, devoid of advocacy, political relevance, or artistic expression" constitutes speech. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446–47 (2d Cir. 2001). "Instructions, do-it-yourself manuals, recipes, even technical information about hydrogen bomb construction are often purely

15

functional; they are also speech." *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1435 (N.D. Cal. 1996) (citation omitted). The "alphanumeric combinations on [Virginia's] license plates are the government's medium for communicating identifying information about the vehicle." *Gilliam*, 2025 WL 617603, at *8.

The same is true even considering the specific history of Virginia's vanity plate program. See *Shurtleff*, 596 U.S. at 253, 255 (considering both the "general history" of "flag flying" as well as "the details of *this* flag-flying program"). Virginia has required license plates almost from the invention of the automobile over a century ago, confirming that they have conveyed a government message of identification since inception. See 1906 Va. Acts ch. 299. Indeed, the very fact that Virginia did not begin offering vanity plates until the 1970s illustrates that the historical function of license plates was to convey government speech, not private speech. See 1906 Va. Acts ch. 299; 1972 Va. Acts ch. 427. For over sixty years, license plates served the sole purpose of identifying vehicles to the public.

The identifying purpose of license plates did not change with the inception of the Program. The uniformity requirements imposed on both

16

vanity plates and standard plates evidence this purpose—they cannot include more than seven-and-a-half characters, they all include "Virginia" or its abbreviation, and they generally must be placed on the front and rear of vehicles. See pp. 2–3, 5, *supra*. Thus, all Virginia license plates, both standard and personalized, still convey the same government message today as they did in 1906: "this vehicle is registered with the state." JA20; see also *Gilliam*, 2025 WL 617603, at *9 ("[T]he alphanumeric combinations on Tennessee's personalized plates—like the combinations on Tennessee's general-issue plates—have communicated identifying information about the vehicles on which they are displayed.").

Whateley's arguments to the contrary fail. Whateley primarily attempts to divorce the message he intended to express through his selection of "FTP&ATF" from the government's identifying message expressed through the characters on his license plate. See Whateley Br. 24–28. But Whateley's expressive intent does not supersede the governmental message of identification conveyed by the license plate. "Different speakers . . . may convey different things through the same medium of speech." *Gilliam*, 2025 WL 617603, at *9. A vehicle owner may request an alphanumeric combination to express an idea, but the State

17

"uses the combination to communicate something different—that the vehicle may be identified using that unique combination of characters." *Ibid.*

Indeed, who is speaking is not an either-or question—a medium can express more than one message from more than one speaker. The Supreme Court has held that "it frequently is not possible to identify a single 'message' that is conveyed by an object or structure, and consequently, the thoughts or sentiments expressed by a government entity that accepts and displays such an object may be quite different from those of either its creator or its donor." *Summum*, 555 U.S. at 476; see also *Walker*, 576 U.S. at 217 ("The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider."). This possibility of multiple messages squarely addresses Whateley's suggestion that it would be incongruous for the DMV to both convey an unobjectionable message through Whateley's license plate and recall Whateley's plate due to its offensiveness. See Whateley Br. 26. Two things can be true at once: the state can communicate an identifying message *and* Whateley's chosen

18

character combination can also violate the DMV Guidelines. The DMV's actions to recall Whateley's plate do not indicate that license plates contain pure private speech.

Put simply, when the government conveys its own message through a medium, it is government speech regardless of whether the medium also conveys private messages. See *Summum*, 555 U.S. at 472, 474–77 (holding that, even though it was possible for monuments to convey multiple messages, they "constitute[d] government speech" because they "convey[ed] a government message"); *Walker*, 576 U.S. at 217 ("[A] government entity may exercise its freedom to express its views even when it receives assistance from private sources for the purpose of delivering a government-controlled message." (cleaned up)).

Second, Whateley incorrectly limits his historical analysis to the Virginia Program's history, which only began in 1972. Whateley Br. 29–31. Supreme Court precedent indicates that courts should look to the more general history of the type of government property at issue when conducting this analysis. See *Walker*, 576 U.S. at 210–11 (evaluating the history of license plate designs generally, not just from the beginning of Texas's modern license plate design program); *Summum*, 555 U.S. at

19

470–72 (considering the use of monuments "[s]ince ancient times"); *Shurtleff*, 596 U.S. at 253–55 (evaluating the entire history of flag flying, including Boston's flag flying program, and noting that "[f]lags are almost as old as human civilization"). Beginning the historical analysis in 1972 with the origin of the Program ignores the over sixty-five years during which the Commonwealth used license plate registration numbers *solely* as a means of identification. When this Court correctly takes into account the entire history of license plate registration numbers, beginning in 1906, *Walker*'s historical analysis controls: license plates express a governmental message.

Because the history of license plates in general and in Virginia indicates that license plate registration numbers communicate a government message, the district court correctly determined that the history weighed in favor of a finding of government speech.

20

II.   **The public perceives license plates (and their registration numbers) as government speech**

    A.   **The public associates the registration numbers on Virginia license plates with the government because the characters are a government identifier**

The public necessarily identifies license plates (and their registration numbers) with the government because registration numbers are inherently government identifiers regardless of any other message they might convey. Virginia's long history of using license plates to communicate an identifying message indicates that the public inextricably associates license plate registration numbers with the Commonwealth.

As the district court correctly noted, the Supreme Court's reasoning in *Walker* emphasized that "license plates are, essentially, government IDs." JA22 (quoting *Walker*, 576 U.S. at 212). The Supreme Court stated that, because "issuers of ID typically do not permit the placement on their IDs of messages with which they do not wish to be associated," people "who observe designs on IDs routinely—and reasonably—interpret them as conveying some message on the issuer's behalf." *Walker*, 576 U.S. at 212 (cleaned up). Thus, like license plate designs, registration numbers on Virginia license plates "are often closely identified in the public mind

21

with the State." *Ibid.* (cleaned up). Indeed, registration numbers themselves are even *more* identifiable with the government than any plate design on which they appear because it is the registration numbers that serve the core purpose of uniquely identifying the vehicles displaying them. See Va. Code § 46.2-712 (requiring license plates to "display the *registration number* assigned to the motor vehicle" (emphasis added)); see also pp. 3–4, *supra* (explaining the various ways that the character combinations are used for identification).

This is true even when a private party selects a particular character combination for the registration number. In *Walker*, the Supreme Court considered the following factors when determining whether the public would associate license plate designs with the government: (1) Texas license plates were "government article[s] serving the governmental purposes of vehicle registration and identification"; (2) "TEXAS" was written in large font at the top of every plate; (3) Texas issued the plates and required vehicle owners to display them; (4) Texas "own[ed] the designs on its license plates"; and (5) Texas regulated the disposal of the license plates. *Walker*, 576 U.S. at 212.

As the district court correctly observed, each of these factors is present here. JA21–23. Virginia license plates are government property, Va. Code § 46.2-713, serving the governmental function of "vehicle registration and identification," *Walker*, 576 U.S. at 212. Their nature reflects this function—they are uniform in design, including "Virginia" at the top,[5] and the standard plates include "Virginia is for Lovers" and "Virginia.org" at the bottom. See *Passenger Standard Issue*. The State requires vehicles to display license plates. Va. Code § 46.2-711(F). And Virginia owns the plates and may repossess them. Va. Code § 46.2-713; see also *id.* § 46.2-714. Thus, like in *Walker*, the public is aware of the governmental nature of the license plate, will associate the registration number on the plate with the Commonwealth, and will assume that the Commonwealth endorses the message.

The Supreme Court recognized in *Walker* that "a person who displays a message on a Texas license plate likely intends to convey to the public that the State has endorsed that message"; if not, "the individual

---

[5] There are a few exceptions to this general rule, such as the license plates for antique vehicles, but even these exceptions contain either "Virginia" or "VA" elsewhere on the plate. See *Search/View Specialized License Plates*, Va. Dep't of Motor Vehicles, https://tinyurl.com/2cxtxvae (last visited Nov. 3, 2025).

23

could simply display the message in question in larger letters on a bumper sticker right next to the plate." 576 U.S. at 212. So too here. The fact that drivers do not opt for a bumper sticker and, instead, seek to have their message printed on government property indicates that they associate the message with the government. If they did not, it would make no difference whether they expressed their message through a bumper sticker or through the registration number.

Through the Program, the Commonwealth has opted to allow citizens to personalize the registration number on license plates in part to raise funds for the government. Indeed, the district court recognized that "vanity plates in the Commonwealth operate as a revenue generator for the DMV, as each personalized plate costs the customer an extra $10 fee that is maintained in a fund for the operation of the department." JA20–21 (quotation marks omitted). If citizens choose to pay the additional fee and create a vanity plate, the result is still a unique registration number which supports the overriding purpose of government identification.

Because license plates primarily function as government identification, they are inextricably intertwined with the government in the public's mind. Accordingly, the district court correctly determined that the

24

public perceives the registration numbers on license plates as government speech.

### B.    Whateley's arguments to the contrary fail

Whateley cannot overcome the persuasive force of *Walker*. Whateley primarily "invokes common sense in arguing that the public attributes personalized alphanumeric combinations to the driver rather than the State." *Gilliam*, 2025 WL 617603, at *10. For instance, Whateley asserts that license plate registration numbers cannot be government speech because they can espouse contradictory messages through the Program. See Whateley Br. 33 (providing possible examples of inconsistent messages in license plate character combinations, such as "'TRYGOD' and 'NOGOD'"). But "the dissenting opinion in *Walker* made the same appeal to common sense, to no avail." *Gilliam*, 2025 WL 617603, at *10 (citing 576 U.S. at 221–22); see also *Walker*, 576 U.S. at 222 (Alito, J., dissenting) (arguing that it was highly unlikely that a member of the public would "assume that the State of Texas was officially (and perhaps treasonously) rooting for the Longhorns' opponents" upon seeing Texas license plates bearing the names of "Texas's out-of-state competitors"). The dissent questioned whether the public would "really think that the

25

sentiments reflected in these specialty plates are the views of the State of Texas and not those of the owners of the cars." *Id.* at 221–22. Yet the majority nonetheless found that these contradictory license plate designs were government speech, emphasizing that license plates are effectively government IDs that the public associates closely with the state. *Id.* at 212–13 (opinion of the court).

Second, Whateley's argument that government control is less relevant to license plate registration numbers than it is to license plate designs, Whateley Br. 36–37, is unconvincing. Whateley essentially contends that the space where registration numbers on a license plate reside is "marked out for private speakers." Whateley Br. 36. But that argument would apply with equal force to the license plate designs considered in *Walker*. The designs filled what could be described as unoccupied space on Texas license plates. See *Walker*, 576 U.S. at 236 (providing images of various Texas license plate designs). Yet, the Court found that the public would nonetheless associate license plate designs with the State because of their governmental purpose, the State name on the plates, the State's requirement that the plates be displayed, the State's ownership of the design, and the State's regulation of license-plate disposal. *Walker*, 576

26

U.S. at 212. These factors are all equally applicable to the registration numbers on Virginia plates. See Part II.A, *supra*.

Third, that Virginia opened license plate registration numbers to some degree of public involvement via the Program does not suggest that the public perceives those registration numbers as private speech. Whateley Br. 37. Allowing limited public input into government speech does not transform registration numbers into private speech. See *Walker*, 576 U.S. at 210 (noting that, in *Summum*, "the involvement of private parties in designing the monuments" did not "prevent the government from controlling which monuments it placed in its own public park"). To hold otherwise would effectively force governments to "allow private persons to . . . include their own slogans [on government IDs]," something Whateley himself admits is not allowed. See Whateley Br. 37.

Indeed, *Walker* recognizes this fact, explaining that "license plates are, essentially, government IDs" and "issuers of ID typically do not permit the placement on their IDs of messages with which they do not wish to be associated." 576 U.S. at 212 (cleaned up); see also *id.* at 222 (Alito, J., dissenting) (observing that "the numbers and/or letters identifying the vehicle" on the license plate are "unquestionably . . .

27

government speech"). To the contrary, the conformity requirements and enforceable standards for the registration numbers indicate that the public understands them to be government speech. See pp. 5–6, *supra.* And, consistent with this purpose, Virginia exercises active control over the character combinations on Virginia license plates. See Part III, *infra.*

Fourth, Whateley is wrong that the individualized nature of the registration numbers on vanity plates "increases the likelihood that it will be attributed to the driver rather than the state." Whateley Br. 35. Whateley argues that, unlike in *Walker*, a personalized registration number cannot be replaced by a bumper sticker "because it is unique" and "part of the point of having it is to be *the* person who has it and project that identity to the world." Whateley Br. 36. But the uniqueness of the registration number is exactly the point of the government speech; every license plate is, by definition, a unique governmental identification. Whateley's argument thus recognizes this core governmental identification purpose of license plates.

Fifth, the fact that a Virginia citizen complained to the Commonwealth about Whateley's personalized plate is evidence that the public views the characters on the plate as government speech, not private

28

speech as Whateley argues. Whateley Br. 35. The citizen did not attempt to track Whateley down and complain to him about his speech. Instead, the citizen emailed the government to complain, indicating that he or she associated the speech on Whateley's plate *with the government*. See JA8. The citizen complaint demonstrates that the public views vanity plates as government speech and expects the government to avoid using offensive terms on such plates.

Sixth, Whateley's belated request to develop additional evidence regarding public perception is untimely and, even if permitted, would not advance his argument. Whateley Br. 37–39. This argument should be rejected because he failed to raise it before the district court. See *United States v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 290 (4th Cir. 2014) ("Although *pro se* complaints and arguments are to be liberally construed, the failure to first present claims to the district court generally forecloses our consideration of these matters on appeal." (cleaned up)). Moreover, the Supreme Court has analyzed the public-perception factor in recent government-speech cases without considering this type of survey evidence. See *Walker*, 576 U.S. at 212–13; *Summum*, 555 U.S. at 471, 474–78; *Shurtleff*, 596 U.S. at 255–56; *Matal*, 582 U.S. at 237–38. These

decisions indicate that survey evidence is not necessary for a court to reach a determination on this factor and that the district court properly did so without considering external evidence. Plus, Whateley relies on a survey that the Supreme Court of Tennessee recently repudiated in *Gilliam*, 2025 WL 617603.[6] Whateley Br. 37–38.

Finally, Whateley's last-ditch effort is to suggest that, if this Court determines that the registration numbers on Virginia license plates are government speech, current Virginia regulations will violate the Establishment Clause. Whateley Br. 34. This argument is neither properly before the Court nor correct. Whateley did not present an Establishment Clause challenge before the district court and so cannot press such a challenge for the first time on appeal. See *In re Under Seal*, 749 F.3d at 290. His invocation of the Establishment Clause also does not undermine the district court's conclusion that the registration numbers are government speech. The Establishment Clause does not "compel the government to

---

[6] As the Supreme Court of Tennessee noted, the survey on which Whateley depends is unreliable because "methodological flaws limit its probative value." *Gilliam*, 2025 WL 617603, at *10. The survey suggested to participants that personalized plates were either government speech or personal speech without recognizing that speech can be both simultaneously. *Gilliam*, 2025 WL 617603, at *11.

purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) (quotation marks omitted). Moreover, the only authority Whateley cites for his Establishment Clause argument is a district court case decided twenty years before *Walker* that expressly did not "analyz[e] whether the public views license plates as statements made by the Commonwealth of Virginia or by DMV." *Pruitt v. Wilder*, 840 F. Supp. 414, 418 (E.D. Va. 1994); see Whateley Br. 34. Virginia's license plate regulations are neutral, treating religious and secular personalized plates equally, and do not violate the Establishment Clause's prohibitions.[7]

At bottom, even though the public may understand that drivers select the registration numbers on vanity license plates, they equally un

---

[7] Whateley mentions in passing that "ethics laws may prevent the state from endorsing commercial products whose names appear in personalized character combinations." Whateley Br. 34. This argument fails for the same reasons as Whateley's Establishment Clause argument: it was not raised before the district court, is unsupported by any authority, and is irrelevant to how the public views the speech on personalized plates. See pp. 30–31, *supra*.

31

derstand that those registration numbers are unique government identifications issued and controlled by the State. They are, accordingly, government speech.

### III. The Commonwealth maintains direct control over registration numbers on license plates

The third *Walker* factor, whether the government exercises control over the speech at issue, also weighs in favor of holding that the registration numbers on license plates are government speech. Here, Virginia maintains control over the form of license plates, has issued guidelines regarding allowable content, screens all plates, and exercises final approval authority over the content on the plates. These facts place the Program squarely within *Walker*'s purview.

In *Walker*, the Court emphasized that Texas "approve[d] every specialty plate design proposal before the design [could] appear on a Texas plate." 576 U.S. at 213. The Court noted that Texas had "actively exercised this authority" by "reject[ing] at least a dozen proposed designs." *Ibid.* Thus, "Texas ha[d] effectively controlled the messages conveyed by exercising final approval authority over their selection." *Ibid.* (cleaned up); see also *Summum*, 555 U.S. at 473 ("[T]he City has 'effectively controlled' the messages sent by the monuments in the Park by exercising

32

'final approval authority' over their selection." (quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 560–61 (2005))).

Likewise, Virginia exercises final approval authority over the contents of license plates. Contrary to Whateley's assertion, Virginia takes an active role in "'shaping the message' of the personalized character combinations," Whateley Br. 39, by strictly regulating the content of license plates. As in *Walker*, Virginia "has sole control over the design, typeface, color, and alphanumeric pattern for all license plates." 576 U.S. at 213 (quotation marks omitted); see Va. Code § 46.2-712(A) ("Subject to the need for legibility, the size of the plate, the letters, numerals, and decals thereon, and the color of the plate, letters, numerals, and decals shall be in the discretion of the Commissioner.").

As part of this control, Virginia requires license plates to be unique, and the Commissioner will reject any requested combination that is already in use. *Personalized Message Information*, Virginia Dep't of Motor Vehicles, https://tinyurl.com/2e2ma9p9 (last visited Nov. 3, 2025). This rejection would be unnecessary were it not for the registration number's overriding message of a unique identification. Additionally, Virginia en-

33

forces strict guidelines regulating the content of vanity plates, which prohibit registration numbers that are profane, obscene, vulgar, sexually explicit, graphic, excretory related, descriptive of "intimate body parts or genitals," "[u]se[d] to condone or encourage violence," or descriptive of "illegal activities or illegal substances." *Personalized Message Information*. These guidelines are similar to those discussed in *Summum*, in which certain localities had "exercise[d] editorial control over donated monuments through prior submission requirements . . . [and] written criteria." 555 U.S. at 472. Finally, Virginia screens each personalized plate request to ensure that it complies with DMV Guidelines. *License Plate Application*, at 2 ("All personalized character combinations are screened by DMV to ensure compliance with DMV's Personalized License Plate Policy."). Each of these factors indicates that Virginia actively controls the speech present on personalized plates.

Whateley's arguments to the contrary fall flat. First, Whateley suggests that "prospective guidelines like these are insufficient to establish government speech." Whateley Br. 41. But Whateley misstates the standard—the Court does not look to whether the guidelines are prospective or retrospective. It asks whether the government "actively control[s]" or

34

"shape[s]" the speech at issue. *Shurtleff*, 596 U.S. at 256. That the Commissioner has chosen to exercise his discretion through prospective guidelines available to the public does not invalidate his discretion. Indeed, Virginia actively screens plate proposals and sometimes rejects proposed plates or recalls plates that it disapproves of, as it did here. This screening is more than just a "formal possibility of control," Whateley Br. 42; it demonstrates that Virginia exercises "final approval authority" over vanity plates. *Walker*, 576 U.S. at 213. And it demonstrates that Virginia intends to exert "control over the . . . content and meaning" of the registration numbers because the Commonwealth recognizes it will be associated with the messages. See *Shurtleff*, 596 U.S. at 255–56.

Second, Whateley points out that Virginia has issued over 930,000 vanity license plates, accounting for 11 percent of registered vehicles, which is "the highest percentage of personalized license plates of any state." Whateley Br. 1 (footnote omitted). Whateley thus emphasizes the "limited number" of monuments discussed in *Summum* and states that, because license plates can accommodate a large number of private speakers, they bear the "characteristics of an expansive public forum." Whate-

35

ley Br. 43–44. But the Court clarified in *Walker* that *Summum* emphasized the permanency and limited number of monuments "because the government speech at issue occurred in public parks, which are traditional public forums for 'the delivery of speeches and the holding of marches and demonstrations' by private citizens." 576 U.S. at 214 (quoting *Summum*, 555 U.S. at 478). Even though "a State could theoretically offer a much larger number of license plate designs," that fact did not render those designs private speech because "license plates are not traditional public forums for private speech." *Ibid.* The same is true here. Even though there can be thousands of different vanity license plates, they still constitute government speech because the concerns present about traditional public forums in *Summum* are not present here. That Virginia has a robust personalization program does not change the fact that Virginia exercises control over the contents of the character combinations on those plates.

Third, contrary to Whateley's argument, Virginia retains permanent ownership of all registration numbers. See Whateley Br. 44. The registration numbers themselves are owned by the state pursuant to stat-

ute. Va. Code § 46.2-726 ("The Commissioner may, in his discretion, reserve license plates with certain registration numbers or letters or combinations thereof for issuance to persons requesting license plates so numbered and lettered."). Further, the registration numbers are placed on state property, they remain the property of the State while displayed, and, in some cases, the State requires their return when the vehicle registration terminates. Va. Code §§ 46.2-713, 46.2-2139. Whateley admitted these facts in his briefing before the district court, stating that "it is without debate" that "the ownership of the personalized license plates are and remain the property of the state." Whateley's Opp'n to Mot. to Dismiss at 11, ECF No. 13. Thus, Whateley's assertion that "the record in this case contains no indication that Virginia seeks ownership over the messages in the personalized character combinations," Whateley Br. 44, is facially inaccurate, as Virginia retains ownership over the registration numbers before, during, and after a citizen requests them and displays them on his vehicle.

Fourth, Whateley further attempts to liken vanity plates to the "transitory expressive acts" discussed in *Summum* because they are registered for a limited period and are then returned to the Commonwealth.

37

Whateley Br. 45 (quoting *Summum*, 555 U.S. at 464). But displaying a message for at least a year is hardly transitory. License plate designs are likewise only displayed for the duration of a vehicle's registration, yet the Supreme Court held in *Walker* that "[license plate] designs need not be available for time immemorial" to constitute government speech. *Walker*, 576 U.S. at 214; see also *Vista-Graphics, Inc. v. Virginia DOT*, 682 Fed. Appx. 231, 236 n.5 (4th Cir. 2017) (per curiam) (noting that "the issue of permanence" was not dispositive in *Walker*). Likewise, the messages on vanity plates need not be displayed in perpetuity to constitute government speech.

Finally, although Whateley attempts to liken this case to *Shurtleff*, 596 U.S. 243, and *Matal*, 582 U.S. 218, those cases are markedly different. In *Shurtleff*, the Court concluded that the "most salient feature" of the case was that the city did not "actively control[]" the "flag raisings [or] shape[] the messages the flags sent." 596 U.S. at 256. But in that case the city effectively exercised *no control* over the flags flown. Indeed, the city did not "see [the] flags before the events," had "no written policies or clear internal guidance" about which flags were permissible, and had "approve[d] flag raisings, without exception" before the dispute at issue.

38

*Id.* at 257. By contrast, Virginia has clear guidelines for acceptable speech, actively reviews personalized plate applications, and regularly denies them. See pp. 6, 33–34, *supra.*

Likewise, *Matal* is inapposite. There, the Court grappled with the question of whether trademarks registered by the United States Patent and Trademark Office (PTO) were government speech. *Matal*, 582 U.S. at 234–39. Pursuant to the authorizing statute, the PTO had no discretion over which trademarks to register. *Id.* at 235. Instead, trademark registration was mandatory as long as the trademarks did not violate statutory requirements. *Ibid.* Additionally, the Court emphasized that "[t]rademarks have not traditionally been used to convey a Government message" and that "there is no evidence that the public associates the contents of trademarks with the Federal Government." *Id.* at 238. Indeed, the Court distinguished trademarks from the license plates designs discussed in *Walker* and expressed concern over the government regulating speech by "simply affixing a government seal of approval" on it. *Id.* at 235, 238–39.

*Matal's* reasoning is inapplicable here. First, the Commissioner has full discretion over which messages to allow on vanity license plates. See

39

Va. Code § 46.2-726. Further, unlike trademarks, license plates traditionally have been used to convey a government message. See Part I, *supra*. And the nature of license plates as government IDs makes them vastly different from the trademark applications at issue in *Matal*. Unlike in *Matal*, in which the trademarks consisted of pure private speech that did not take place on government property, registration numbers on vanity plates appear on a government ID, which the public inherently associates with the government. See Part II.A, *supra*. Accordingly, this case does not implicate the Court's concerns about the government "simply affixing a government seal of approval." *Matal*, 582 U.S. at 235. Instead, the government is actively controlling the limited speech present on a government identification through which the government has historically expressed itself. This case bears little similarity to *Matal* and, instead, is on all fours with *Walker*.

Thus, Virginia actively controls the registration numbers on vanity license plates, and the district court accurately held that this control is indicative of government speech.

\* \* \*

40

License plate registration numbers on vanity plates are therefore government speech. Because these registration numbers are government speech, there is no need to perform a forum analysis. See *Walker*, 576 U.S. at 215 ("[F]orum analysis is misplaced here. Because the State is speaking on its own behalf, the First Amendment strictures that attend the various types of government-established forums do not apply."). Thus, Whateley's attempt to apply forum-analysis principles is unavailing. See, *e.g.*, Whateley Br. 27–28. Forum-analysis principles are only applied *after* the court has determined that the speech at issue is *not* government speech. See *Summum*, 555 U.S. at 480 (refusing to apply forum analysis because the Court determined that the monuments at issue were government speech). This Court should therefore affirm the district court's conclusion that the registration numbers are government speech without the need to conduct any forum analysis.

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

GERALD F. LACKEY, Ph.D., in his official capacity as Commissioner of the Virginia Department of Motor Vehicles

41

/s/ Graham K. Bryant

GRAHAM K. BRYANT
*Principal Deputy Solicitor General*

JASON S. MIYARES
*Attorney General*

JANET W. BAUGH
*Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

November 3, 2025

KEVIN M. GALLAGHER
*Solicitor General*

MEREDITH L. BAKER
*Deputy Solicitor General*

LEAH J. DEFAZIO
*Assistant Solicitor General*

*Counsel for Defendant-Appellee*

42

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,746 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Graham K. Bryant*

GRAHAM K. BRYANT
*Principal Deputy Solicitor General*

43

## CERTIFICATE OF SERVICE

I certify that on November 3, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Graham K. Bryant*

GRAHAM K. BRYANT
*Principal Deputy Solicitor General*